**AIR REDUCTION COMPANY, Inc., et al.,**

v.

**Walter J. HICKEL, Secretary of the Interior, et al., Appellants.**

**No. 22847.**

United States Court of Appeals District of Columbia Circuit.

Argued June 6, 1969.

Decided Sept. 22, 1969.

Petition For Rehearing Denied Oct. 21, 1969.

---

Mr. George R. Hyde, Attorney, Department of Justice, with whom Messrs. Roger P. Marquis and Floyd L. France, Washington, D. C., were on the brief, for appellants.

Mr. Robert X. Perry, Jr., with whom Mr. Thomas J. Lynch, Washington, D. C., was on the brief, for appellees.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from an order permanently enjoining appellant, the Secretary of the Interior, from enforcing or acting under those portions of regulations appearing in Vol. 33 Fed.Reg. 15478–80 (1968) which apply to purchases of helium by contractors of federal agencies.

The regulations compel Government contractors to purchase from the Government their helium requirements for the contracts. We hold that appellees, producers and distributors of helium, have standing to attack the regulations, and that the regulations exceed the authority of the Secretary. We affirm the summary judgment entered by the district court.

I

THE PERTINENT REGULATIONS

In 1925 Congress authorized the Department of the Interior to extract helium from natural gas before the natural gas was used for fuel and the helium dissipated. Act of March 3, 1925, 43 Stat. 1110. Twelve years later, Act of Sept. 1, 1937, 50 Stat. 885, Congress amended the original act to authorize the sale of Government-produced helium not needed for military purposes to private users. By 1960 concerns for increasing demands for helium and predictions of future inadequate supplies led Congress to pass the Helium Act of 1960, 74 Stat. 918, 50 U.S.C. § 167 (1964), which provided for a long-range conservation program. The Act also called for self-financing for the program, which was to be provided in part by the creation of a "captive market" for the Government. See 50 U.S.C. § 167d(a):

§ *167d(a) Sale of Helium—Purchase by Government Agencies*

The Department of Defense, the Atomic Energy Commission, and other agencies of the Federal Government, to the extent that supplies are readily available, shall purchase all major requirements of helium from the Secretary.

The Secretary was given authority to set his own price for the helium that he sold, 50 U.S.C. § 167d(c), and authorized "to establish and promulgate such rules and regulations, as are consistent with the directions of this chapter and are necessary to carry out the provisions hereof." 50 U.S.C. § 167g. Also included in the 1960 legislation was the following provision, see 50 U.S.C. § 167m:

§ *167m. Individual enterprise in developing helium*

It is the sense of Congress that it is in the national interest to foster and encourage individual enterprise in the development and distribution of supplies of helium, and at the same time provide, within economic limits, through the administration of this chapter, a sustained supply of helium which, together with supplies available or expected to become available otherwise, will be sufficient to provide for essential Government activities.

After the passage of the 1960 Act, several private companies, appellees among

them, began their own helium extraction. Because the Secretary's price for helium reflected not only direct extraction costs, but also a portion of the costs involved in the Government conservation program, the Secretary's price for helium (thirty-five dollars per thousand standard cubic feet) exceeded the private producers' price ($25 per mscf). As the private companies' sales increased, the Secretary's sales decreased, despite increased over-all demand.

In response to this situation, the Secretary proposed certain regulations in 33 Fed.Reg. 5219–20 (1968). Following receipt of comments from interested parties, including objections from appellees, regulations were published on October 18, 1968, in 33 Fed.Reg. 15478–80, to become effective December 2, 1968. The effective date was postponed administratively until December 10 because of this litigation. The District Court has enjoined the Secretary from enforcing or operating under the regulations.

In their final form the regulations undertook

(1) to forbid Government agencies *and their contractors* from purchasing major requirements of helium from any source but the Secretary or private companies "eligible" under the regulations;

(2) to define "eligible" private suppliers as those who would cooperate with certain bookkeeping and Government inspection procedures and who would buy at least as much helium from the Secretary as they sold to Government agencies *and contractors;* and

(3) to forbid the sale of Government helium to those private distributors who failed to become "eligible" under the regulations.

## II

## STANDING

■ The Secretary argues that even if his regulations are not congressionally authorized, appellees have no standing to assert their invalidity because the regulations interfere with no legal right held by the appellees. Thus, the Secretary claims, we have no reason to reach the merits of the case. We reject that position. The Secretary's regulations would interfere with appellees' existing beneficial business relations with Government contractors, and are subject to challenge by appellees on the ground that they are invalid and hence an unlawful termination of a beneficial business relationship for supplying the needs of the Government. Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570 (1964). See also Abbott Laboratories v. Gardner, 387 U.S. 136, 154, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967); United States v. Storer Broadcasting, 351 U.S. 192, 199–200, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 419, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942).

## III

## VALIDITY OF THE REGULATIONS

■ The language of 50 U.S.C. § 167d(a), provides that Government "agencies" shall purchase all major requirements of helium from the Secretary. We find no reason to broaden the normal meaning of the word "agencies," so as to extend to Government contractors. The Secretary's regulations under attack distinguish between "agencies" and "contractors." [1] The issue, then, is whether the purpose of § 167d (a), with language that refers only to "agencies," was to embrace not only helium purchased directly by the agencies, but was intended to apply, as an automatic mandate, to all helium purchased indirectly, so to speak, by Government agencies, i. e., to helium purchased directly by Government contractors.

■ There are aspects of the legislative history that lend support to the Sec-

___

1. 33 Fed.Reg. 15479, § 2.3 (1968).

retary's position.[2] The Secretary's brief quotes from a portion of the floor debate on the 1960 Act between Senator Lausche and Senator Allott, who was floor manager of the bill:

> Mr. Lausche. The statement which was made, that the executing officer would borrow the money from the Treasury and pay it back at compound interest, really would mean that the money would be borrowed from the Treasury to buy helium, let us say, and then helium would be sold to Government departments.
>
> Mr. Allott. And to contractors.[3]

But these statements, read in light of the fact that when they were made the Government was the sole supplier of helium,[4] appear to indicate little more than that the Senators believed that the Secretary would continue to sell at least some helium to federal contractors. Moreover, the subsequent exchange between the two Senators indicates that the real concern had nothing to do with who would have to buy helium but rather with Senator Lausche's fear that the whole program represented simply a bookkeeping device whereby the Government would sell helium with its right hand and buy it with its left.[5]

2. Even when the language of a statute is unambiguous, the legislative history may throw new light onto its meaning. NLRB v. Radio and Television Broadcast Engineers Union, Local 1212, 272 F.2d 713, 715 (2d Cir. 1959). Thus, we do not stop with the determination that the meaning of the word "agency" is "clear" without the legislative history.

3. 106 Cong.Rec. 18545 (Aug. 31, 1960).

4. Hearings on H.R. 10548, and S. 3376 before the Senate Comm. on Interior and Insular Affairs, 86th Cong., 2d Sess. 50 (1960).

5. Mr. Lausche. And to contractors. What really will happen is that the Government will put up the money but will not truthfully receive the money back, because in the final analysis there will still be an expenditure by the taxpayers, though a necessary one.

Mr. Allott. Perhaps from the Senator's point of view that is true. I would not argue.

Mr. Lausche. It is a bookkeeping operation.

Mr. Allott. No, it is far more than that.

The situation as it is today is that if the Department of Defense wishes to obtain so much helium, it must buy it. If the Atomic Energy Commission wishes so much helium, it must pay for it. We do not have Government control over helium, with the helium parceled out to departments as they wish to have it.

Mr. Lausche. That is correct.

Mr. Allott. Actually, this is a way of financing the purchases of helium by contractors and also by the various departments of Government, so that it is not all thrown into one pocket, where we let Susie, Mary, and Jane dip into it as they wish.

Mr. Lausche. The point I wish to make—and if I am not correct, I am sure the Senator will correct me—is that the Government will not be making a profit, and then out of the profit paying off the debt.

Mr. Allott. No, the Government will not make a profit.

Mr. Lausche. The only profit—

Mr. Allott. May I finish my thought for my friend?

Mr. Lausche. Yes.

Mr. Allott. The Government will have to sell the helium at a price which now has to be estimated, because they do not know what they shall contract for, in the neighborhood of $40 a thousand.

It is estimated that the $40 a thousand will make possible the amortization of the advances for the purchases of helium, which will be stored underground. It will make possible the amortization of that money and also the interest on that money over a 25-year period.

Does that answer the question of my friend?

Mr. Lausche. It will amortize the money with money one branch of the Government will pay to another branch of the Government.

Mr. Allott. To a certain extent that is true, but the departments would have to purchase the helium, anyway.

Mr. Lausche. Therefore, an agency is being created which will have charge of the responsibilities of gathering helium, paying for it, and selling it to other branches of Government—selling a part of it, probably to private industry, amounting to some 10 percent.

Mr. Allott. I do not think that is, in the strict context, an exact statement, I will

The Secretary has also found language by Acting Secretary of the Interior Elmer Bennett, in the hearings preceding the 1960 Helium Act, which lends stronger support:

Senator ANDERSON. Is not the answer that the Secretary will not sell much helium? If he has a price higher than the [private supplier] can sell for, he will not sell much helium, will he?

Mr. Bennett. Yes; he will, for the reason that the Government and Government-related market is reserved to him in the bill.

Senator ANDERSON. That is just buying it and selling that to the Army, the Navy, and Marine Corps.

Mr. Bennett. And the contractors.

\* \* \* \* \* \*

Senator O'MAHONEY. Is there a time in the future, you know not when, when private sales of helium under your program will destroy your program?

Mr. Bennett. Oh, no. We cannot see that within the foreseeable future, for the simple reason that over 90 percent of the market is already Government and Government-related.

In other words, it is controllable, because we are dealing with defense contractors.[6]

While Mr. Bennett's meaning seems clear in the reply to Senator Anderson, concerning a "Government-related market" "reserved" to the Secretary, it is fuzzed in the comment to Senator O'Mahoney that this market "is controllable." The term "controllable" is significantly different from, say, "controlled." And these statements in the hearings must be read in the context of Mr. Bennett's earlier letter to Speaker Rayburn proposing the language that was passed, requiring "Government agencies" to purchase from the Secretary. That letter distinguished

say to my friend. Actually, the Federal Government is not creating any new agency. The Department of the Interior, under the act of 1925, as amended, presently has the power of condemnation. The situation is that we will simply be permitting the Secretary a flexibility in the acquisition, the storage, and the preservation of helium which he does not now have. We will not be creating any new department or any new commission.

\* \* \* \* \*

Mr. Lausche. However, the Senator has stated that 90 percent of the helium would be used by some Government agency.

Mr. Allott. Seventy percent would be used by a governmental agency; 20 percent by firms who are contracting with the Government in one of these fields.

\* \* \* \* \*

Mr. Lausche. One final question. Except for the helium that would be sold to private industry, as far as the Government is concerned, it would be a bookkeeping operation because as buyer, we would be using taxpayers' money to buy the helium, and then in selling, we would be selling to a Government agency, which would be using the taxpayers' money to pay the price.

Mr. Allott. If the Senator should take that view, the answer would have to be yes; but it is no more of a changing of pockets or a bookkeeping transaction than it is at the present time.

Mr. Lausche. That still does not negate what I have said.

Mr. Allott. The Senator simply cannot say that this is the whole Government, and then permit everyone to dip into it. The Defense Department, for example, has to pay for and buy its share of the helium it uses. NASA has to pay for and buy its share of the helium it uses.

The Atomic Energy Commission must do this. The various organizations throughout the country which have defense contracts of one kind or other with the Government would have to buy their share of helium. I really cannot see any other way, to be honest with my friend, that this operation could be handled.

Mr. Lausche. I am not disputing that. When the Defense Department buys it, it uses taxpayers' money.

Mr. Allott. That is right.

Mr. Lausche. NASA also.

Mr. Allott. Yes. Everything that is purchased by the Government ultimately is paid for by the Government with taxpayers' money. In that respect the Senator is right.

6. Hearings, *supra* note 4, at 50, 52.

between use by Government "agencies" and on Government "contracts." [7]

Mr. Bennett's language over all, in proposing the bill and in the hearings, is consistent with a construction that does not depart from the plain meaning of the words used in the statute (that only Federal "agencies" are required by the act to buy from the Secretary), but permits "Government contractors" to be a Government-related market that may be reserved by the Secretary because it is "controllable"—controllable in that the Government contractors can be required to buy from the Secretary by provisions inserted in their contracts (rather than by direct operation of the statute). The hearings were not followed by amended language in the committee reports establishing the statutory requirement as applicable to federal contractors.[8] The floor debates are consistent with an assumption that Government contractors represent a market subject to continued control or capture through contract provisions rather than by operation of the statute.

We do not suggest that Congress intended the Secretary to lose his market because of private competition. The legislative history points to a contrary result. However, since Congress did not provide that Government contractors automatically be required to purchase helium from the Secretary, the objective of maintaining the Secretary's market must be achieved by means of different powers, e. g., by provisions within the agency-contractor contracts inserted when the need would arise, or by arrangements under which the agency would use the standard Government-furnished-property clause to supply to its contractors helium which it obtained from the Secretary. Hence Government "contractors" are a Government-related

market that can be reserved to the Secretary's program if routed there by use of appropriate provisions in the contracts. But we agree with the District Court that the direct operation of the statute is limited to purchases by Government agencies and that Government "contractors" are not within the statute as written.

Affirmed.

---

7. H.R.Rep. No. 1552, 86th Cong., 2d Sess. 10 (1960): "Seventy percent of the helium is used directly by the Department of Defense, the Atomic Energy Commission, National Aeronautics and Space Administration, and other Federal *agencies.* An additional 20 percent is used in

industry on Federal defense and atomic energy *contracts.*" [Emphasis added.] The letter from Acting Secretary Bennett to Speaker Raburn is dated July 27, 1959.

8. See H.R.Rep. No. 1552, *supra* note 7, at 1–2.