**OPELIKA NURSING HOME, INC., a corporation, et al., Plaintiffs,**

v.

**Elliot L. RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, and Ira L. Myers, State Health Officer for the State of Alabama, Defendants.**

Civ. A. No. 3180–N.

United States District Court,
M. D. Alabama, N. D.

Jan. 4, 1973.

Alvin T. Prestwood, Volz, Capouano, Wampold & Prestwood, Montgomery,

Ala., John M. Broeker, Haverstock, Gray, Plant, Mooty & Anderson, Minneapolis, Minn., John K. Pickens, Alexandria, Va., and William A. Geoghegan, and Thomas Clevan Fox, Pierson, Ball & Dowd, Washington, D. C., for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen., Civil Div., and David Epstein, Atty., Civil Div., Dept. of Justice, Washington, D. C., and Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., M.D. Alabama, Montgomery, Ala., for Secretary of Health, Education and Welfare.

William J. Baxley, Atty. Gen., of Alabama, and Herman H. Hamilton, Jr., Sp. Asst. Atty. Gen. of Alabama, Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for Ira L. Meyers, State Health Officer, State of Alabama.

## ORDER

JOHNSON, Chief Judge.

The plaintiffs, providers of skilled nursing home services in the State of Alabama, challenge the constitutionality of and seek declaratory and injunctive relief from certain Health, Education and Welfare regulations providing for payment for skilled nursing home services (45 CFR 250.30(b)(3)(ii)) and the phasing out of supplementation payments in Alabama (45 CFR 250.-30(a)(6)) promulgated by the Secretary of Health, Education and Welfare under Title XIX of the Social Security Act (sometimes referred to as the "Medicaid Program"). The action is also brought on behalf of other persons similarly situated who own or operate skilled nursing homes and participate in the Medicaid Program in Alabama. Defendants are the Secretary of Health, Education and Welfare and the Alabama official responsible for the administration of Alabama's program. The case is now submitted, by stipulation, upon the evidence taken by deposition, the various documents attached thereto, and the briefs of the parties. Upon this submission this Court now makes the appropriate findings and conclusions and, as authorized by Rule 52 of the Federal Rules of Civil Procedure, incorporates same in this memorandum opinion.

The first regulation promulgated by the Secretary and here challenged by the plaintiffs, 45 CFR 250.30(b)(3)(ii), provides that payments received by the providers of skilled nursing home care under Title XIX of the Social Security Act shall not exceed payments received by providers furnishing comparable services under Title XVIII (Medicare). The second challenged regulation, 45 CFR 250.30(a)(6), requires states having existing programs that allow supplementation payments to skilled nursing homes from sponsors, friends, etc., to submit a plan phasing out such payments within a reasonable time period after January 1, 1971. Plaintiffs seek declaratory relief and an injunction restraining the Secretary of Health, Education and Welfare and the Alabama Medicaid Program Administrator, and their agents and representatives, from enforcing these regulations.

The Secretary moved to dismiss, asserting that this Court lacked jurisdiction over the subject matter of the action and over the person of the Secretary of Health, Education and Welfare. The pecuniary loss claimed by the plaintiffs was found by this Court to be too speculative to satisfy the requirement of 28 U.S.C. § 1331(a), on which the plaintiffs had posited subject matter jurisdiction, and this Court dismissed the case. 323 F.Supp. 1206 (1971). On appeal, the United States Court of Appeals for this circuit, 448 F.2d 658, held that the plaintiffs should be given an opportunity to present facts in support of their jurisdictional claim and remanded the case for full development of the jurisdictional facts. The Court of Appeals ruled that the burden which the plaintiffs must discharge is to show by a preponderance of the evidence that it does not appear to a legal certainty that their claim is really for less than the jurisdictional amount. In addition to claiming that this Court has jurisdiction, plaintiffs assert that (1) the Secretary vio-

lated applicable administrative procedures in the promulgation of the final regulations providing for payment for skilled nursing home services, (2) the action of the Secretary in promulgating the regulations in question was arbitrary and capricious, (3) the regulations in question are inconsistent with the applicable statutory language of Title XIX and in excess of the Secretary's authority thereunder, and (4) the application of the regulations in question produces a result clearly contrary to the intent of Congress.

## JURISDICTION

■ In addition to contending that they have established the existence of an amount in controversy exceeding $10,000, the plaintiffs also claim that jurisdiction exists independently under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Taking the latter contention first, while it is true that the argument is often made, and in some instances has been adopted by a number of courts, that section 10 of the Administrative Procedure Act confers jurisdiction on federal courts, the question nevertheless has not been authoritatively decided.[1] Neither the United States Court of Appeals for the Fifth Circuit nor the Supreme Court has explicitly ruled on the issue. It is the judgment of this Court that the better view, and the view followed by most of the circuits which have considered the question, is that section 10 of the Administrative Procedure Act does not confer jurisdiction.

■ Although the evidence regarding the amount in controversy is highly speculative, nevertheless the plaintiffs appear to have shown that it does not appear to a legal certainty that their claims are really for less than the jurisdictional amount. Accordingly, this Court holds that jurisdiction is vested by virtue of 28 U.S.C. § 1331.

1. Cramton, Nonstatutory Review of Federal Administrative Action; The Need for Statutory Reform of Sovereign Immunity,

## PLAINTIFFS' CONTENTIONS

Even though the plaintiffs have succeeded in showing the requisite amount in controversy, they have failed to improve the merits of their claims. As hereinafter discussed, the law on each and every point raised by the plaintiffs is fairly clear and clearly adverse to their positions.

### A. Scope of Review

■ There is no disagreement that plaintiffs have a right to review within the meaning of 5 U.S.C. § 702 or that the challenged agency action is reviewable within the meaning of 5 U.S.C. § 704. The statute governing the scope of review of agency action is 5 U.S.C. § 706, which states, among other things, that the reviewing court shall:

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law; . . . "

The precise scope of review to be accorded an agency action depends largely on the sort of agency action under review. For example, administrative action is said to be "more likely to be reviewed narrowly if it is determined to be rule making pursuant to a grant of power to make rules having force of law, and . . . is more likely to be reviewed broadly if it is determined to be in the nature of adjudication." 4 Davis, Administrative Law Treatise § 30.10 (1970 Supp.). The scope of review of "interpretative rules", that is, agency

Subject Matter Jurisdiction, and Parties Defendant, 68 Mich.L.Rev. 387 (1970).

pronouncements, falls somewhere in between that accorded "legislative rules" and that accorded agency adjudication.

■ The instant case involves the review of two agency rules. Whether the rules in question are legislative or interpretative depends initially on whether they have been issued pursuant to a grant of law-making power. It is clear that the Secretary has been granted authority "[to] make and publish such rules and regulations, not inconsistent with [Chapter 7, Title 7, United States Code] as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter." 42 U.S.C. § 1302. In classifying a rule as legislative or interpretative, however, what an agency does is as important as the source of its power. As a practical matter, the particular classification given a rule depends in large measure on whether the focus of the reviewing court is on the propriety of the procedure followed by the agency in issuing a rule or on the substantive reasonableness or correctness of the rule.

As noted earlier, plaintiffs challenge 45 CFR 250.30(b)(3)(ii) on both procedural and substantive grounds.

### B. Applicable Administrative Procedures

■ On this point plaintiffs charge that the Secretary failed to issue a notice of proposed rule making and thus denied interested parties the statutory right under the Administrative Procedure Act, 5 U.S.C. § 553, to comment, for a 30-day period, on the reasonable cost reimbursement formula. Here the controlling case is Rodriguez v. Swank, 318 F.Supp. 289 (N.D.Ill.1970), aff'd without opinion, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971). In *Rodriguez* the court upheld the validity of HEW regulations, noting that "[a]lthough it appears that no notice of proposed rule making was given when these regulations were issued, the requirement of notice in the Administrative Procedure Act, 5 U.S.C. § 553(b), is inapplicable when regulations concern matters relating to grants, as do the instant ones." The case relied on by plaintiffs, Pharmaceutical Mfg. Assoc. v. Finch, 307 F.Supp. 858 (D.Del.1970), involved a direct regulation of an industry and is thus inapplicable to the point.

■ Since the rule challenged by the plaintiffs falls within the "grant" exception, it is not necessary for the purpose of procedural review to determine whether the rule is legislative or interpretative. However, a strong presumption exists that it is merely interpretative for purposes of substantive review.

### C. Arbitrary and Capricious Agency Action

Here plaintiffs contend that the Secretary, in promulgating 45 CFR 250.-30(b)(3)(ii), acted arbitrarily and capriciously in that he (1) failed to employ administrative expertise, (2) failed to consider the factors of efficiency, economy and quality of care, and (3) allowed impermissible factors to be considered in the promulgation of the regulations.

■ The weakness of plaintiffs' contention that the Secretary acted arbitrarily lies in the fact that the plaintiffs attack the wrong end of the rule-making process. They attempt to bring under judicial scrutiny the process by which the challenged rule came into being, to brand that process as arbitrary and capricious and on that basis lay the ground work for their conclusion that the agency has the burden of proving the validity of the regulation. Plaintiffs cite no persuasive authority for such a contention. Those cases cited by plaintiffs involve arbitrary and capricious agency action in the course of an agency adjudication or other non-rulemaking proceedings. Where, as here, a properly promulgated rule is challenged as arbitrary and capricious, the focus of the reviewing court is on the substance of the regulation and its relationship to the relevant statute, rather than on the process by which the rule came into being. The burden of

showing unreasonableness is on the party challenging the regulation, Review Committee v. Willey, 275 F.2d 264, 272 (8th Cir. 1960), and where, as here, the reviewing court is faced with a problem of statutory construction, the interpretation given the statute by the agency charged with its administration is normally entitled to great weight. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Evidence of an agency's failure to employ administrative expertise or of allowing impermissible factors to be considered in the promulgation of a regulation will not shift the burden of showing unreasonableness.

### D. *The Challenged Rule Versus the Language of the Statute and the Intent of Congress*

While plaintiffs concede that by virtue of 42 U.S.C. § 1302 the Secretary has been authorized to "make and publish . . . rules and regulations, not inconsistent with" Title XIX, they contend that the language of 45 CFR 250.-30(b)(3)(ii) is inconsistent with the statutory language it purports to implement and is contrary to the intent of Congress.

The statutory language in question, 42 U.S.C. § 1396a(a)(30), requires that state Medicaid plans "assure that payments (including payments for any drugs provided under the plan) are not in excess of reasonable charges consistent with efficiency, economy, and quality of care." The regulation implementing this provision requires that payments established by the state may not exceed payments received by providers for comparable services under Title XVIII of the act (Medicare), which payments are calculated on an administratively determined "reasonable cost" method of reimbursement. As plaintiffs themselves admit, the statutory phrase involved is "reasonable charges consistent with efficiency, economy, and quality of care," and the issue is whether "reasonable costs" *as defined* in Title XVIII—not "reasonable costs" as the term might otherwise be commonly understood—is consistent with that statutory phrase. The meaning of the statutory phrase in question is determined by looking at the statutory language itself, its context in the statute, and its legislative history, if any.

An examination of the statutory language, its context, and its legislative history reveals the weakness of plaintiffs' argument. While Congress does use the term "reasonable charges" and does specify in 42 U.S.C. § 1396a(a)(13)(D) that some providers (namely inpatient hospitals) be paid "reasonable costs" as determined by the Secretary, it does not follow, as plaintiffs suggest, that Congress thereby intended the two phrases to have separate and distinct meanings. Contrary to the impression plaintiffs attempt to create, subsection (30) does not apply specifically to nursing homes but rather applies to state Medicaid plans generally. The phrase "reasonable charges consistent with efficiency, economy, and quality of care" thus applies to payments to *all* providers of Medicaid. Consequently, with respect to one class of providers, namely providers of inpatient hospital services, Congress itself appears to have given the phrases "reasonable charges consistent with efficiency, economy, and quality of care" and "reasonable costs" identical rather than separate and distinct meanings.

The legislative history also reveals the weakness in plaintiffs' argument. It is misleading to say, as plaintiffs do, that in enacting subsection (30) Congress was "ignoring" the Secretary's Supplement D recommendation to state administrators that Title XIX facilities other than hospitals be paid amounts equivalent to Title XVIII reasonable costs. Congressman Wilbur Mills' remarks on the House floor indicate that subsection (30) was a compromise method for controlling the cost and quality of drugs. 113 Cong.Rec. 36369 (1967). Thus, it is clear that Congress was ignoring Supplement D only in the sense that it was ignoring altogether the application of

subsection (30) to skilled nursing homes.

The next step in plaintiffs' argument is that the construction of subsection (30) is not doubtful, that its language is sufficiently unambiguous and its directions sufficiently specific, and for that reason there is no room for clarifying regulations. The foregoing consideration of the statutory language, its context, and its legislative history offers ample evidence of the weakness of this position. As a matter of fact, the language of the statute is singularly lacking in specificity and for that reason necessitated administrative interpretation.

■ The final step in plaintiffs' argument is that the Secretary's regulation is inconsistent with the intent of Congress. The initial weakness of such an argument is with respect to plaintiffs' characterization of the relevant Congressional intent. Plaintiffs say that the dominant Congressional intent of Title XIX was that of requiring that a state plan assure that services be available, provided and furnished to qualified individuals under the act. That, of course, is true. What plaintiffs failed to mention, however, is that the more immediate Congressional purpose in enacting subsection (30) was to curtail rapidly rising Medicaid costs. The best that can be said for plaintiffs' contention is that Congress concededly did not intend that economy measures should jeopardize the entire Medicaid program. Plaintiffs, of course, claim to have shown that just such a result will follow from the challenged regulations. This, however, is the central weakness of plaintiffs' final argument and indeed of their whole case, for the evidence simply does not support that contention. While the evidence of threatened pecuniary loss is not so speculative as to oust this Court of jurisdiction, it is far too speculative to support the contention that the challenged regulations "will result in the denial of nursing home services to many persons in Alabama who are eligible under the Medicaid program". In fact, to the extent that the experience of Alabama nursing homes under Title XVIII is any guide, it is possible that at least some nursing homes could receive more under the reasonable cost formula than they have been receiving from customary charges. Plaintiffs, in short, have failed to sustain their burden of proving that the challenged regulation is contrary to the intent of Congress.

The only remaining question is with respect to the deference to be shown the Secretary's particular interpretation of the statutory phrase in question. The grant of authority in 42 U.S.C. § 1302 to make rules and regulations has been described by the Supreme Court as having conferred broad rule-making powers upon the Secretary. Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 277 n. 28, 89 S.Ct. 518, 21 L. Ed.2d 474 (1969). See also Arizona State Dept. of Public Welfare v. HEW, 449 F.2d 456 (9th Cir. 1971); Connecticut State Dept. of Public Welfare v. HEW, 448 F.2d 209 (2nd Cir. 1971).

Plaintiffs' primary attack on the Secretary's interpretation centers on the HEW staff assumption concerning the similarity of the Medicare and Medicaid programs. Plaintiffs assert that there are "vast differences between the Medicare extended care facility program and the Medicaid skilled nursing home program" which militate against utilizing the reimbursement formula of the one in the implementation of the other. As a matter of fact, the only difference clearly established from the evidence is the difference in the percentage of patients under each program. This evidence actually weighs more heavily against the plaintiffs' own interpretation of the statutory phrase in question than it does against the Secretary's assumptions as to the similarity between Medicare and Medicaid. Plaintiffs' suggested relative standard for determining "reasonable charges" is rendered virtually meaningless where, as here, the percentage of nursing home patients on Medicaid approaches 75–85 percent.

In short, plaintiffs' attempt to demonstrate the unreasonableness of the Secretary's assumptions as to the similarly between Medicaid and Medicare not only fails to bring to light any reason not to accept the Secretary's assumptions, but also affirmatively establishes a reason why the alternative interpretation suggested by plaintiffs is not entitled to the same weight as the interpretation suggested by the Secretary.[2]

### E. The Regulation Phasing Out Supplementation

██ Plaintiffs' arguments on this part of the case are difficult to follow. The clearest statement is their assertion that "Congress has not prohibited supplementation and . . . the Secretary does not have the authority to abolish it . . . . " What plaintiffs fail to mention, however, is that Congress never authorized supplementation as a permissible means of reimbursement and that the Secretary himself was the one who allowed this practice, which predated Medicaid, to continue. With this in mind, plaintiffs' argument reduces to the contention that the Secretary, having interpreted Title XIX as permitting the temporary continuance of supplementation as a means of reimbursement under the Medicaid program, is not allowed to revise that policy so as to phase out supplementation as a permissible means of reimbursement under the Medicaid program. On this point, a clear statement by the Senate Finance Committee should be noted, to the effect that it had "determined not to include [in the Social Security Amendments of 1967] any legislation dealing with this situation upon the assurance of the Department of Health, Education, and Welfare that existing supplementation programs will be permitted to continue until January 1, 1971." It was further stated that such states as allow supplementation "are expected to provide the Secretary, prior to 1971, with a plan for phasing out such supplementation during a reasonable period of time subsequent to January 1, 1971." See Senate Report No. 744, 90th Cong., 1st Sess., reprinted in U. S. Code Congressional and Administrative News pp. 2834, 3026 (1967). See also Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971).

In conclusion, it is clear that the plaintiffs have failed to show either that the Secretary is without statutory authority to phase out supplementation or that the state's elimination of supplementation is arbitrary and capricious.

Accordingly, it is the Order, Judgment and Degree of this Court that plaintiffs' action for declaratory and injunctive relief be and the same is hereby denied.

It is further Ordered that the costs incurred in this proceeding be and they are hereby taxed against the plaintiffs.

---

2. In the Social Security Amendments of 1972, P.L. 92–603, Congress revised 42 U.S.C. § 1396a(a)(13) so as to require state laws by 1976 to provide that payments to skilled nursing homes be on a reasonable cost basis.