**STATE OF FLORIDA et al., Plaintiffs,**

v.

**Elliot L. RICHARDSON, Secretary of the U. S. Department of HEW, Defendant.**

**Civ. A. No. 1826.**

United States District Court,
N. D. Florida.

March 13, 1973.

---

Eli H. Subin, Orlando, Fla., for Florida State Nursing Home Assn.

George D. Webster, and Arthur L. Herold, Washington, D. C., for American College of Nursing Home Administration.

William A. Geoghegan, and Thomas C. Fox, Washington, D. C., for American Nursing Home Assn.

Joe O. Rogers, Austin, Tex., for National Assn. of Examiners of Nursing Home Administrators.

S. Strome Maxwell, Asst. Atty. Gen., Department of Legal Affairs, The Capitol, Tallahassee, Fla., for State of Florida, and Florida Board of Examiners of Nursing Home Administrators and its members.

Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., Harlington Wood, Jr., Asst. Atty. Gen., Department of Justice, Washington, D. C., for defendant.

## OPINION–ORDER

MIDDLEBROOKS, District Judge.

This cause is before the Court pursuant to notice upon plaintiffs' application for preliminary injunction. The Court already has under advisement defendant's motion for judgment on the pleadings or in the alternative for summary judgment; and plaintiffs' cross-motion for summary judgment. Counsel

for the parties were present and heard and the Court having fully considered argument of counsel and memoranda of law in support of the respective positions of the parties as well as affidavits, pleadings and exhibits affixed thereto, enters the following findings of fact and conclusions of law as may be required by Rule 52(a), Federal Rules of Civil Procedure:

## PRELIMINARY STATEMENT OF THE ACTION

This action for declaratory and injunctive relief arises over dispute of disbursement of funds to plaintiffs under the federal medical assistance program (MEDICAID) as established by Chapter XIX of Title 42, United States Code, Sections 1396 et seq. Under the aforementioned statutory provisions there is established a federal program whereby medical assistance is provided to individuals whose economic resources are otherwise insufficient to meet the costs of necessary medical services.[1] This program is funded in part by the federal government and administered by participating states pursuant to a state plan submitted to and approved by the Secretary of the Department of Health, Education and Welfare, hereinafter referred to as the Secretary.

Plaintiff State of Florida is a participating member in the medicaid program. The individually named persons and associations participate in the medicaid program at the state levels and receive federal funds to operate nursing homes by virtue of state plans submitted to the Secretary for approval.[2]

On October 3, 1969, the State of Florida submitted its state plan to the Secretary which was ultimately approved; thereafter, and continuing until present,

the State of Florida has been a participating member in the medicaid program and as such has been receiving federal monies to administer their plan. From these monies funded to the State of Florida by the federal government, local nursing homes have financially benefited to the extent they have received funds to assist in the operation and maintenance of the nursing homes.

Existing federal law[3] provides in part that a state plan for medical assistance must:

" * * * include a State program which meets the requirements set forth in Section 1396g of this title, for the licensing of administrators of nursing homes; * * *."

It is further[4] provided that licensing of nursing home administrators shall be implemented in the following manner:

"Licensing of nursing home administrators shall be carried out by the agency of the State responsible for licensing under the healing arts licensing act of the State, or, in the absence of such act or such an agency, a board representative of the professions and institutions concerned with care of chronically ill and infirm aged patients and established to carry out the purposes of this section."

Pursuant to this congressional direction, the Secretary on February 28, 1970, promulgated regulations in conformity therewith which regulations in part embodied that language contained in Section 1396g(b) of Title 42, United States Code.

In order to comply with the expressed policies of the Congress as implemented by the Secretary, the State of Florida and other participating states enacted legislation to provide for boards for the

---

1. See Title 42, United States Code, Section 1396.

2. In addition to nursing home administrators and associations from the State of Florida listed as plaintiffs in the complaint, there are listed as plaintiffs par-

ties from the states of Ohio and New York and the District of Columbia.

3. Subsection (29) of Title 42, U.S.C. Section 1396a(a).

4. Subsection (b) of Title 42, U.S.C. Section 1396g(b).

licensure of nursing home administrators.[5]

Thereafter, the various state regulatory schemes were put into effect in conformity with the congressional expression embodied in those regulations promulgated by the Secretary. On September 9, 1971, the Secretary, ostensibly acting pursuant to authority vested in him by Title 42, United States Code, Section 1302,[6] proposed the following regulation (36 F.R. 18106) which provided in pertinent part that:

. "Board [for licensing of nursing home administrators] means a duly appointed State board established for the purpose of carrying out a State program for licensure of administrators of nursing homes, and which is assigned all the duties, functions, and responsibilities prescribed in paragraph (c)(2) of this section. Said board shall be composed of individuals representative of the professions and institutions concerned with the care and treatment of chronically ill or infirm elderly patients; provided that less than a majority of the board membership shall be representative of a single profession or institutional category and provided further that the noninstitutional members shall have no direct financial interest in

nursing homes. For purposes of this definition nursing home administrators are considered representatives of institutions. This definition is effective July 1, 1973 * * *."

On March 29, 1972, the Secretary adopted this proposed regulation as a final regulation which retained the above referenced definition of "board". See 45 C.F.R. 252.10(b)(3). It was the Secretary's intention that this regulation implement Title 42, United States Code, Section 1396g(b), hereinbefore cited.[7]

As a result of the foregoing agency action plaintiffs contend *in primis* that the effect of the regulation prohibiting nursing home administrators from constituting a majority of the membership of a state board for licensure of nursing home administrators except for those nursing homes which are "a distinct part of a hospital" deprives plaintiffs of due process of law and equal protection under the law as well as contravening the letter and spirit of the Tenth Amendment.[8]

Defendant in turn filed his answer generally denying these allegations of constitutionally infirm conduct and raised defenses traditionally asserted by way of a motion to dismiss under Rule 12, Federal Rules of Civil Procedure.[9]

---

5. The pertinent Florida legislation is found in Sections 468.163–468.178, Florida Statutes, F.S.A. By this enactment the Florida Board of Examiners of Nursing Home Administrators was created, which board consisted of eleven members, six of whom must be nursing home administrators. Section 468.166(2)(a)(b), Florida Statutes, F.S.A.

6. This statute reads as follows:
   The Secretary of Health, Education and Welfare * * * shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter.

7. The government's brief says that no participating state has a "healing arts" statute as referred to in § 1396g(b) of Title 42, U.S.C. and this statement has not been contested; thus, the only question

of interpretation concerns the alternative provision that the licensing board be "representative of the professions and institutions concerned with care of chronically ill and infirm aged patients." It is the Secretary's interpretation of this portion of the statute to which plaintiffs object.

8. This action was brought under Title 28, United States Code, Sections 2201, 2202; the jurisdictional predicate is laid in the form of federal question under Title 28, U.S.C., Section 1391. It is also contended that jurisdiction is vested in this Court by virtue of Title 5, U.S.C., Section 701 et seq.

9. The grounds urged for dismissal of this action are failure to state a claim upon which relief can be granted; lack of subject matter jurisdiction and jurisdiction over the person and lack of standing to sue.

In addition to the general facts previously chronicled the Court now makes the following express findings of fact:

## FINDINGS OF FACT

[1] Since the promulgation of the contested regulation and continuing to present, plaintiffs have and are receiving federal funds under the medical assistance program.

[2] Defendant has not terminated the flow of public assistance funds to plaintiffs nor has the State of Florida received formal notice that such federal funds to it will be terminated for noncompliance with the recently promulgated regulation made the subject matter of this litigation.

[3] Existing statutory authority [10] provides that before termination of public assistance payments to a participating member state the Secretary shall provide reasonable notice of and opportunity for hearing to the state whose plan is no longer in substantial compliance with the provisions of Title 42, United States Code, Section 1396a. In addition to this statutory remedy there is also provided means of prompt appellate review to the United States Court of Appeals from a final determination made by the Secretary under Section 1396c of Title 42, United States Code, when the agency determination is adverse to the interests of the state. [11]

[4] In addition to not having affirmatively shown that public assistance funds to them will be terminated and that they have received actual notice to that effect, plaintiffs have failed to show that the Secretary will not accord them a full and fair hearing as contemplated by the above-described statutory scheme in the event that it is determined that plaintiff State of Florida should be cited for noncompliance with the provisions of Chapter XIX of Title 42.

[5] To date no plaintiff has had a hearing of any kind before the defendant agency relative to compliance *vel non* with the provisions of Chapter XIX of Title 42 and the termination of funds thereunder.

[6] In an attempt to sustain the grant of injunctive relief *pendente lite* plaintiffs have recited to the Court that the legislative machinery of the State of Florida must be put in motion on or before July 1, 1973, in order to prevent the loss of funds and to bring the Florida "state plan" into conformity with the regulation now challenged; and that by requiring this course of action before resolution of this litigation on the merits defendant is impeding the maintenance of the *status quo* between the parties and thereby potentially depriving plaintiffs the fruits of victory in the event they prevail on the merits of this controversy.

[7] The Court finds such would not be the case. Plaintiffs have adequate statutory and administrative remedies to which they may avail themselves to prevent curtailment of funds under Chapter XIX of Title 42 before this controversy is determined on its merits. [12] There has not been a sufficient showing of likelihood of loss or injury to plaintiffs which would be tantamount to an irretrievable loss necessary for the grant of injunctive relief.

[8] Plaintiffs have not shown the likelihood that they will prevail on the merits of this action.

## CONCLUSIONS OF LAW

[1] This Court has jurisdiction over the parties to this action.

---

10. Title 42, United States Code, Section 1396c.

11. Title 42, United States Code, Section 1316(a)(3).

12. In addition to the aforementioned statutory sections, provision for a conformity hearing is contained in 45 C.F.R. § 213.1 et seq. Undoubtedly these provisions were enacted to provide adequate procedural safeguards. Cf. Goldberg v. Kelly, 397 U.S. 254, 265, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

## INJUNCTIVE RELIEF

■ [2] This action in its present posture is not ripe for court action in light of facts above found and thus injunctive relief must be denied. Maxwell v. Wyman, 458 F.2d 1146 (2d Cir. 1972)

## DECLARATORY RELIEF

[3] Both parties having moved for summary judgment the Court now considers the propriety of the grant of a declaratory decree particularly in light of the Court's denial of application for injunctive relief.[13]

Commencing with argument of the parties relative to plaintiffs' standing to sue, the Court at the outset is aware of the transmutations that the traditional notions of standing have undergone in recent years. See e.g. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (1970); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972). Compare more recently, Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973).

■ [4] Notwithstanding the enlargement of standing standards, defendant contends initially that plaintiffs, other than the State of Florida, have no direct relationship with the federal defendant and are not within any protected zone of interests for standing purposes. The Court is in agreement. The relationship of the non-state plaintiffs is directly and solely with the state in which they reside and any remunerative benefits derived by these plaintiffs from the medicaid program is by virtue of this relationship with the states. Perforce, those legal principles necessitating the earlier denial of injunctive relief would have equal application here to deny these non-state plaintiffs standing to maintain this action for declaratory relief. Maxwell v. Wyman, supra.[14]

■ [5] The Court's task as to the plaintiff State of Florida is not so simple; yet, in light of the facts here present, the Court is compelled to conclude that the complaint for declaratory decree must be dismissed as to this plaintiff as well.

As previously observed, there is a direct relationship between plaintiff state of Florida and defendant, and this nexus seemingly would provide the source of standing to this plaintiff to adjudicate the manner in which the medicaid program is administered by defendant.

---

13. Jurisdiction of this cause is predicated on Title 28, United States Code, Section 1331(a); jurisdiction is invoked pursuant to Title 28, United States Code, Sections 2201 and 2202. See fn. 8, supra. Plaintiffs also assert jurisdiction under Title 5, United States Code, Sections 701 et seq. Because of the disposition to be made in this proceeding, the Court does not answer this assertion of jurisdiction. But see Opelika Nursing Home, Inc. et al. v. Richardson, 356 F.Supp. 1338 (M.D. Ala.1973).

Defendant has urged several grounds for judgment in his favor. The Secretary spearheads his argument by saying the Court lacks jurisdiction over the subject matter of this action because plaintiffs lack standing to sue. Along this same line defendant contends that this is an unconsented suit against the sovereign. Over and beyond these jurisdictional hurdles defendant contends that the administrative action taken is supported by a substantial factual basis and that the scope of review should be narrowly confined.

14. In Roe v. Wade, supra, the Supreme Court in considering the standing of the lead plaintiff exclaimed: "'The logical nexus between the status asserted and the claim sought to be adjudicated' * * * and the necessary degree of contentiousness * * * are both present." Ibid. at p. 124, 93 S.Ct. at p. 712. Implicit in this Court's conclusion in paragraph 4 above is the absence of this "logical nexus". This Court is "not prepared to say that the bare allegation of so indirect an injury [which is speculative and purely prospective] is sufficient to present an actual case or controversy". See Roe v. Wade, supra, at p. 128, 93 S.Ct. at p. 714. Compare this Court's earlier decision in Landreth v. Hopkins, 331 F.Supp. 920 (N.D.Fla.1971) (Three-Judge Court). See also S. v. D., —— U.S. ——, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

This analysis does not run deep enough; but to grapple with this perplexing issue further will reveal the legal aorta which leads to the heart of decision in this cause.

Because plaintiffs have not yet suffered any actual injury and because there are statutory and administrative means to which plaintiffs may resort in order to paralyze the harmful agency action complained of, defendant vehemently contends that the requisite "ripeness" for decision has not been shown. Plaintiffs counter that they have standing to obtain pre-enforcement review of agency action and in support of their position refer to such recent authority as Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L. Ed.2d 136 (1971) and Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The critical distinctions noted in those cases however is that agency action was final agency action as compared to agency action here which cannot proceed without there first having been a conformity hearing as required by law. If plaintiffs fail to observe the Secretary's regulation and fail to comply therewith they will clearly not be exposed to the imposition of immediate sanctions. Stated otherwise, this regulation cannot be effectively implemented by the Secretary until there has been a conformity hearing with the offending party present, followed by immediate appellate review of the Secretary's action. By availing themselves of this statutory review plaintiffs will obtain meaningful "pre-enforcement judicial review" since the Secretary by statute cannot realistically enforce the regulation in question and terminate the flow of these funds for noncompliance until the statutory review proceedings have run their course.

In this respect, plaintiffs have an adequate remedy at law.

The purpose of this last statement is to call attention that a complaint for declaratory decree, just as one for injunctive relief, is equitable in nature and should be governed by application of equitable principles. Abbott Laboratories v. Gardner, supra, at 155, 87 S.Ct. 1507.[15] Thus, the Court, already having concluded that for injunctive relief purposes plaintiffs had an adequate remedy at law, would not suffer immediate and irreparable harm and were not entitled to equitable relief, now reaches a like conclusion as to the request for declaratory decree.

■■ [6] Additionally and equally intertwined in the Court's present conclusions is the determination that plaintiffs do not possess the requisite standing to maintain this suit since this declaratory action is not ripe for decision in view of the fact that the Secretary, who is empowered to act in matters of this nature, has not been given an opportunity to perform the duties imposed on him by federal statutes. Until then this Court should not entertain the action for declaratory decree and injunctive relief. Bankers Life and Casualty Co. v. Village of North Palm Beach, Florida, 469 F.2d 994, 5th Cir. 1972. This conclusion comports with another rudimentary principle of law that "[d]etermination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function. * * *". International Longshoremen's and Warehousemen's Union v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954). Likewise, "the declaratory judgment procedure

---

15. Compare also Roe v. Wade, supra, and Samuels v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) where the Court expressed the view that where a request for injunctive relief is made and denied, the request for declaratory relief should founder as well. See additionally Palaio v. McAuliffe, 466 F.2d 1230, 5th Cir. 1972 and Milner v. Burson, 470 F.2d 870, 5th Cir. 1972 where the Court of Appeals adhered to application of like standards in both declaratory and injunctive actions.

should not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review." Public Service Commission v. Wycoff, 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291 (1952).

In light of the foregoing, it is therefore

Ordered:

[1] Plaintiffs' application for injunction *pendente lite* be and the same is hereby denied.

[2] Plaintiffs' cross-motion for summary judgment be and the same is hereby denied.

[3] Defendant's motion for summary judgment be and the same is hereby granted and the complaint for declaratory decree is hereby dismissed.