507 F.2d 1363
 COTOVSKY - KAPLAN PHYSICAL THERAPY ASSOC., LTD., an Illinois
professional corporation d/b/a, Edgewater Physical
Therapy Associates, et al., Plaintiffs-Appellants,
v.
UNITED STATES of America et al., Defendants-Appellees.
 No. 74-1831.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 9, 1974.
Decided Jan. 7, 1975.
 
 Alan I. Boyer and Lawrence S. Bloom, Chicago, Ill., for plaintiffs-appellants.
 James R. Thompson, U.S. Atty., Gary L. Starkman and Carol E. Moseley, Asst. U.S. Atty., Chicago, Ill., for defendants-appellees.
 Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.
 STEVENS, Circuit Judge.
 
 
 1
 The question is whether a supplier of services, whose own interests are not directly regulated by statute or administrative action, has standing to challenge a regulation which requires his regulated customers to take their patronage elsewhere.
 
 
 2
 Plaintiffs, five professional physical therapy corporations, appeal from a dismissal of their complaint, which alleges that a Medicare regulation adopted by the Secretary of the Department of Health, Education & Welfare deprives them of property without due process of law; the dictrict court, in an unreported memorandum opinion and order, concluded that plaintiffs lacked standing to challenge the constitutionality of the regulation.
 
 
 3
 The regulation in question was adopted on July 16, 1973, by the Secretary pursuant to his authority under 42 U.S.C. 1395x(o)(6) (Supp. II, 1972) to establish conditions of participation for 'home health agencies'[1] in the federal Medicare program. Home health agencies provide services such as nursing care, physical therapy, or speech therapy to recipients of Medicare benefits. The statute states that these 'home health services' may be provided by the agencies themselves 'or by others under arrangements with them made by such agency . . ..'[2]
 
 
 4
 The challenged regulation, 20 C.F.R. 405.1221(a) (38 Fed.Reg. 18980 (1973))[3] provides, in pertinent part, that:
 
 
 5
 A public or nonprofit home health agency must provide at least one of the qualifying services directly through agency employees but may arrange with another public or nonprofit agency or organization to provide the second qualifying service and any additional services.[4]
 
 
 6
 Thus, the regulation requires, as a condition of their continunig participation in the Medicare program, that nonprofit home health agencies may contract out the provision of physical therapy services only to nonprofit therapy agencies or organizations, and not to proprietary corporations such as the plaintiffs. The plaintiffs have alleged that various home health agencies have notified the plaintiffs that their physical therapy contracts may be terminated in order to protect the Medicare certification of the agencies. The essence of plaintiffs' Fifth Amendment challenge to the regulation is that it arbitrarily discriminates against profit-making physical therapy corporations in favor of nonprofit therapy organizations and individual profitseeking therapists.[5]
 
 
 7
 In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184, and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192, the Court held that a party possesses standing to seek nonstatutory judicial review of administrative action if he 'alleges that the challenged action has caused him injury in fact, econmic or otherwise,' and if 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' 397 U.S. at 152, 153, 90 S.Ct. at 829, 830.[6]
 
 
 8
 It is not necessary for us to consider whether the subsequent decisions of the Court in Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179, and Investment Company Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367, have vitiated the need to comply with the 'zone of interests' component, as some commentators have suggested,[7] for we are satisfied that plaintiffs' interests, as described in their complaint, are arguably within the zone regulated by the statute.
 
 
 9
 The 'zone of interests' component of the Data Processing test of standing is itself composed of two parts, for it refers both to 'protected' interests and 'regulated' interests. Since Data Processing, the Court has upheld standing for plaintiffs asserting that their interests were 'protected' by statute, but the Court has not had occasion to decide any standing cases which turn on whether the plaintiffs' interests were within the 'regulated' zone. In analyzing the standing of the physical therapy corporations in this case we are, however, guided by the Court's reminder in Data Processing that
 
 
 10
 Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. 397 U.S. at 154, 90 S.Ct. at 830.
 
 
 11
 Whether or not the regulation challenged in this case is valid, it certainly relates to an area of activity which the underlying Medicare statutes direct the Secretary to regulate. He is expressly authorized to adopt 'conditions of participation' for home health agencies. 42 U.S.C. 1395x(o)(6). The subcontracting of physical therapy services by such agencies is specifically authorized in 42 U.S.C. 1395x(m)(2). It is at least arguable that these statutory provisions give the Secretary power to regulate the kind of physical therapy services which the agency provides, whether the agency provides the services itself or by subcontracting with others. If, as a condition of certification of a home health agency, its contractual relationships with physical therapy corporations, such as plaintiffs, were directly regulated, there would be no doubt that plaintiffs' interests were within the regulated zone. We think the same conclusion is required when the regulation takes the form of a prohibition against doing business with persons who do not satisfy criteria prescribed by the Secretary.[8] Since the 'zone of interests' test merely requires that plaintiffs' interests in contracting with nonprofit home health agencies be 'arguably' within the regulated zone under the statute, the standard is easily met in this case.
 
 
 12
 Defendants respond and the district court concluded, however, that the regulation purports to regulate only home health agencies and that it does not regulate plaintiffs or their contracts.[9] To focus on whether the plaintiffs are directly regulated themselves is to read the Data Processing test too narrowly. The test is not whether these plaintiffs are regulated by the statute but whether the interests asserted by them arguably fall within the zone of interests so regulated.
 
 
 13
 Nearly three decades before its Data Processing decision, the Supreme Court held that indirect regulation, like that involved in this case, was adequate to confer standing to challenge administrative action. In Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, the Court held that CBS had standing to challenge F.C.C. regulations conditioning the grant of broadcast licenses to local stations on the nature of their contracts with radio networks. Neither CBS nor its contractual relationship with any local station was directly regulated. Nevertheless, in response to a standing argument similar to that made here, the Court held:
 
 
 14
 Appellant's standing to maintain the present suit in equity is unaffected by the fact that the regulations are not directed to appellant and do not in terms compel action by it or impose penalties upon it because of its action or failure to act. It is enough that, by setting the controlling standards for the Commission's action, the regulations purport to operate to alter and affect adversely appellant's contractual rights and business relations with station owners whose applications for licenses the regulations will cause to be rejected and whose licenses the regulations may cause to be revoked. 316 U.S. at 422, 62 S.Ct. at 1202-1203.
 
 
 15
 Even more directly in point is the holding in Air Reduction Co., Inc. v. Hickel, 137 U.S.App.D.C. 24, 420 F.2d 592 (1969). In that case private producers and distributors of helium challenged regulations of the Secretary of the Interior providing that government contractors must purchase all of their helium requirements for those contracts from the government. The regulations, of course, did not directly regulate the plaintiffs or their contracts with government contractors. Nevertheless, the court of appeals held that they had standing.[10]
 
 
 16
 We therefore conclude that if, pursuant to what it perceives to be its statutory authority, a government agency regulates the contractual relationships between a regulated party and an unregulated party, the latter as well as the former may have interests that are arguably within the regulated zone for purposes of testing standing, and for this purpose a total prohibition is a form of regulation.[11]
 
 
 17
 As the interests of these plaintiffs arguably fall within the zone regulated by the Medicare statutes, we hold that they have standing to obtain judicial review of 20 C.F.R. 405.1221(a).[12]
 
 
 18
 Finally, in their brief,[13] defendants appear to argue that, since the Medicare statutes contain specific provisions for judicial review of administrative actions at the behest of home health agencies and Medicare beneficiaries[14] but not of suppliers of services, such as plaintiffs, Congress did not intend to permit such review. Since the district court did not reach this question of 'reviewability,' it is inappropriate for us to do more than note that defendants must meet the stringent standards set forth in Data Processing, 397 U.S. at 156-157, 90 S.Ct. 827; Barlow v. Collins, 397 U.S. at 165-167, 90 S.Ct. 832; and Abbott Laboratories v. Gardner, 387 U.S. 136, 139-141, 87 S.Ct. 1507, 18 L.Ed.2d 681, before a Congressional intent to preclude judicial review of this regulation can be found.
 
 
 19
 The judgment entered below is vacated and the case is remanded to the district court for further proceedings.
 
 
 
 [1]
 Defined in 42 U.S.C. 1395x(o)(1970), as amended (Supp. II, 1972)
 
 
 [2]
 42 U.S.C. 1395x(m) (1970), as amended (Supp. II 1972)
 
 
 [3]
 Notice of Proposed Rulemaking was given at 36 Fed.Reg. 18696 (1971). The provision in question originally was to appear as 20 C.F.R. 405.1221(d)(1)
 
 
 [4]
 The regulation further provides that, 'A proprietary agency, however, must provide all services directly, through agency employees.' This latter restriction is not at issue in this case
 
 
 [5]
 We note that a case challenging this same regulation has been brought by a similarly-situated plaintiff in the District Court for the District of Columbia, Physical therapy Services Rehabilitation Agency v. Weinberger, Civil No. 74-897 (D.D.C., July 2, 1974). In granting plaintiff's motion for preliminary injunction, Judge Green concluded that the plaintiff did have standing
 
 
 [6]
 Mr. Justice Brennan, joined by Mr. Justice White, concurred in the results reached in the two cases, but dissented from the Court's inclusion of the 'zone of interests' criteria. These Justices would have the question of a litigant's standing turn solely on whether the requisite allegation of 'injury in fact' was made. 397 U.S. at 168, 90 S.Ct. 827
 Professor Davis supports the Brennan-White approach, K. Davis, The Liberalized Law of Standing, 37 U.Chi.L.Rev. 450, 457 (1970). Professor Jaffe, on the other hand, would retain the interest requirement; he argues that 'a plaintiff without a 'protected interest' does not have a right to judicial review, but a court may in its discretion take jurisdiction of a suit brought by such a plaintiff.' L. Jaffe, Standing Again, 84 Harv.L.Rev. 633, 638 (1971). Professor Albert has criticized both positions; he sees Professor Davis as attempting to 'transform substantive rules of law . . . into procedural or preliminary principles of access to a court.' He accuses Professor Jaffe of failing to recognize that, when a court determines that a plaintiff's claim does not fall within the interests protected by a statute, it has in fact made a determination on the merits. L. Albert, Standing to Challenge Administrative Action: An Inadequate Surrogate for Claim for Relief, 83 Yale L.J. 425, 440-443 (1974).
 
 
 [7]
 See K. Scott, Standing in the Supreme Court-- A Functional Analysis, 86 Harv.L.Rev. 645, 666 (1973); R. Sedler, Standing, Justiciability, and All That: A Behavioral Analysis, 25 Van.L.Rev. 479, 468 (1972); Comment, Standing: Suits Against Federal Regulatory and Administrative Agencies, 13 B.C.Ind. & Com.L.Rev. 289, 304-305 (1971)
 
 
 [8]
 If, instead of disqualifying plaintiffs because they are proprietary corporations, the regulation were to disqualify them because they employ too many Republicans or too many blacks, for example, the same test of standing should determine whether plaintiffs' interests fall within the regulated zone since the validity of their constitutional claim is unrelated to their standing to assert it
 
 
 [9]
 The district court relied heavily, in denying the plaintiffs' standing, on State of Florida v. Richardson, 355 F.Supp. 1027 (N.D.Fla.1973). In that case, the district court concluded that national and state associations of private nursing homes, administrators and examiners did not have standing to challenge a regulation of the Secretary of H.E.W. altering the composition of the Florida nursing home administrator licensing board. It noted that these plaintiffs had no direct relationship with the Secretary: 'The relationship of the nonstate plaintiffs is directly and solely with the state in which they reside and any remunerative benefits derived by these plaintiffs from the medicaid program is by virtue of this relationship with the states.' 355 F.Supp. at 1032. The court of appeals, however, reversed the district court judgment and held that most of the non-state plaintiffs did in fact meet the Data Processing tests. State of Florida v. Weinberger, 492 F.2d 488, 493-496 (5th Cir. 1974)
 
 
 [10]
 'The Secretary's regulations would interfere with appellees' existing beneficial business relations with Government contractors, and are subject to challenge by appellees on the ground that they are invalid and hence an unlawful termination of a beneficial business relationship for supplying the needs of the Government.' 420 F.2d at 594
 A similar standing question was also presented in New Jersey Chapter Incorporated of the American Physical Therapy Association, Inc. v. Prudential Life Insurance Co. of America, 502 F.2d 500 (D.C.Cir. 1974). There the association challenged regulations of the Social Security Administration defining the standards to be used in judging the reasonableness of charges submitted by physical therapy service providers for reimbursement under Medicare. While two members of the court of appeals panel declined to rule on the standing question, preferring to dispose of the case on the merits, Chief Judge Bazelon concluded that the association had standing under Data Processing. 502 F.2d at 505 (Bazelon, C.J., concurring).
 
 
 [11]
 Professor Davis, however, has suggested that the Data Processing 'zone of interests regulated' formula would not allow a party aggrieved by agency regulations to challenge their legality or constitutionality unless that party was in fact validly regulatable:
 'A plaintiff should have standing if he is in fact regulated to his disadvantage; to have standing he should not be required to show that the interest he asserts is within the zone of interests 'to be' regulated by the statute or constitutional guarantee.
 'For instance, if a statute authorizes the administrator to regulate from A to M, and he regulates X without statutory authorization, X should obviously have standing to challenge, but he does not have under the Court's test, for he cannot show that he is 'to be' regulated.' K. Davis, supra n. 6, at 458.
 We do not read the Data Processing test this narrowly; the Court defined the category of plaintiffs with standing as those persons whose interests are 'arguably within the zone of interests to be . . . regulated by the statute or constitutional guarantee in question.' 397 U.S. at 153, 90 S.Ct. at 830. Whether the interests of the particular plaintiff are in fact lawfully subject to regulation is the question to be answered on the merits, and not in the threshold standing determination.
 
 
 [12]
 We need not consider whether plaintiffs have standing because their interests arguably fall within the zone of interests protected by the Fifth Amendment, the constitutional provision in question. One commentator has so read Data Processing:
 'When the plaintiff is challenging governmental action on constitutional grounds, he necessarily is asserting that his interest is protected by the constitutional guarantee upon which he is relying. Any further inquiry goes to the merits.' R. Sedler, supra n. 7, at 486.
 
 
 [13]
 Appellees' Brief at 12-13
 
 
 [14]
 42 U.S.C. 405(g)(1970), 1395ff (1970), as amended (Supp. II, 1972)