**AIRCO, INC., Plaintiff,**

**v.**

**Rogers C. B. MORTON, Secretary of the Interior, et al., Defendants.**

**No. 75 Civ. 904 (HFW).**

United States District Court,
S. D. New York.

Sept. 13, 1976.

**444**

Shearman & Sterling, New York City by Werner Polak, Thomas Geisler, New York City, of counsel and Jones, Day, Reavis & Pogue, Washington, D. C. by W. Stanfield Johnson, Washington, D. C., of counsel, for plaintiff.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City, by John M. O'Connor, New York City, of counsel and Land and Natural Resources Division, Dept. of Justice, Washington, D. C. by Dennis A. Dutterer, Washington, D. C., of counsel, for defendants.

## OPINION

WERKER, District Judge.

The plaintiff, Airco, Inc., is a New York corporation, one business activity of which is the sale and distribution of helium, in liquid and gaseous form. Its customers include federal agencies and their contractors. The plaintiff filed this action pursuant to 28 U.S.C. § 1331, alleging jurisdiction under the Helium Act and the Administrative Procedure Act. Specifically, plaintiff seeks an injunction and declaratory judgment against three federal officers on the ground that they are engaging in illegal and unauthorized conduct with respect to the plaintiff. The defendants are Rogers C. B. Morton, Secretary of the Interior; Thomas V. Falkie, Director, Bureau of Mines; and A. L. Harder, Contracting Officer, Bureau of Mines. Both sides have moved for summary judgment.

The Helium Act Amendments of 1960, 50 U.S.C. § 167, et seq., were passed because of a concern in Congress that the supply of helium available in the United States would be depleted by 1980–1985 at the present rate of consumption. See 106 Cong.Rec. 18544 (1960). Helium, found only in gaseous form, is used by commercial industry and the federal government. It is considered to be a vital part of our national defense, and missile, and atomic energy programs. As of 1960, the Department of Defense, the Atomic Energy Commission, the National Aeronautics and Space Administration and other federal agencies were responsible for 70% of the helium consumption in the United States. Twenty percent was used by industry for federal defense and atomic energy contracts. The remainder was used by private industry. 106 Cong.Rec. 18544 (1960).

The only feasible source of helium is natural gas of which helium may comprise from 0.5% to 8 or 9% of the total volume. At the time the Helium Act Amendments were passed, vast quantities of helium were wasted. As natural gas was mined to be used, for example as fuel, the helium was not extracted; rather, it remained in the gas stream to be burned off as the natural gas was used. The purpose of the Amendments was to prevent the real possibility that the sources of this vital element would be exhausted.

Under the Helium Act of 1960, the Government provided for private industry to construct and operate helium extraction plants along the principal pipelines transporting helium-bearing natural gas to consumers. All helium so produced would be purchased by the Government and, except for the amount needed for current use, stored for later consumption. Congress intended that the Government, in selling the helium purchased under this statutory scheme would charge a premium over the price it had paid to acquire the helium. This surcharge would permit the amortization of the advances for the purchases of helium and other expenditures authorized by the Act within a 25-year period. 50 U.S.C. § 167d(c). Congress also provided as a last resort if private industry refused to cooperate that the Department of the Interior would have the power of condemnation to take wells or the helium itself to "accom-

plish the preservation and conservation of helium." 106 Cong.Rec. 18544 (1960).

Private industry which was not burdened by the cost of long-term planning for the conservation of helium could afford to sell helium at a lower price than that set by the Secretary of the Interior for Government sales. Underselling by private industry would undermine the conservation effort and to prevent that the Act provided at 50 U.S.C. § 167d(a) that "The Department of Defense, the Atomic Energy Commission, and other agencies of the Federal Government to the extent that supplies are readily available, shall purchase all major requirements of helium from the Secretary."

However, Congress intended

"to foster and encourage individual enterprise in the development and distribution of supplies of helium, and at the same time provide . . . a sustained supply of helium which, together with supplies available or expected to become available otherwise, will be sufficient to provide for essential Government activities." 50 U.S.C. § 167m.

To effectuate this policy, the Secretary promulgated regulations at 30 C.F.R. § 601.1, *et seq.*, which allowed Federal agencies to purchase their helium requirements from either the Bureau of Mines or eligible private distributors. 30 C.F.R. § 602.3. To be eligible, private distributors were required to purchase from the Bureau of Mines at least such quantities of helium as they sold to Federal agencies.[1] In this context it is important to note the statement of Elmer Bennet, Under Secretary of the Department of the Interior, in testifying before the House on the Helium Act Amendments: "If any part of the helium market should be supplied by direct sales from a private plant to consumers, the payout plan would be jeopardized accordingly." Hearings on H.R. 8440, 8451, 10548, 11030 Before the Subcommittee on Mines and Mining of the House Committee on Interior and Insular Affairs, 86th Cong., 2d Sess. at 67 (1960).

It is within the context of this statutory framework that the instant litigation arose. Airco, Inc. entered into a contract with the Bureau of Mines by virtue of which it qualified as an "eligible" private distributor of helium. Pursuant to this contract and the regulations which were incorporated by reference, Airco was required to report all sales of helium to federal agencies and contractors and to replenish its inventory of helium sold to such federal agencies and contractors with purchases from the Bureau of Mines.

Airco sold helium to two federal contractors, the University of Chicago as operator of Argonne National Laboratory and the University of Notre Dame. The purchase orders contained provisions requiring that the helium supplied pursuant to those orders be Bureau of Mines helium. The helium ordered and supplied under these purchase orders was liquid helium. Airco, in making its report to the Bureau of Mines, admitted that none of the liquid helium sales had been reported. Furthermore the company failed to report any sales of liquid or gaseous helium to federal contractors. Finally Airco did not make compensating purchases of Bureau of Mines helium to cover these sales. It is undisputed that at this time the Bureau of Mines did not store or sell liquid helium.

As a result of this failure to report helium sales the Bureau of Mines notified Airco that it was in violation of its contract with the Bureau. Upon Airco's failure to provide "corrected" reports, the Contracting Officer issued Findings of Fact and Decisions on December 9, and 10, 1974. Airco, without conceding the appropriateness of this procedure, appealed the decision to the Board of Contract Appeals of the Department of the Interior (ICBA). Simultaneously, Airco instituted this action. Airco moved to stay the ICBA proceedings pending the resolution of this case. By order dated March 28, 1975, the ICBA granted the motion.

---

1. The regulations originally applied this requirement to contractors of federal agencies. However, the enforcement of this provision was enjoined in *Air Reduction Co. v. Hickel*, Civil No. 2880–68 (D.D.C.1969), *aff'd*, 137 U.S. App.D.C. 24, 420 F.2d 592 (1969).

Airco makes two arguments which the court will consider separately.

In support of its position that liquid sales need not be reported, the company cites section 6 of the Helium Act Amendments, 50 U.S.C. § 167d(a) which requires federal agencies to purchase all major requirements from the Secretary "to the extent that supplies are readily available." Defendant Harder, Contracting Officer for the Bureau of Mines answered an interrogatory on this point as follows:

The Bureau of Mines did not have any quantities of liquid helium on hand and available for sale to private helium distributors during the period January 1, 1974 through June 30, 1974.

Furthermore, the Government does not currently have the capability to produce liquid helium in sufficient quantities to meet commercial needs. Plaintiff argues that these facts are conclusive and dispositive of the action.

■ Such an interpretation would utterly defeat the purpose of the statute and requires a reading of the Act which is by no means compelled by the statutory language. Furthermore, wherever possible this court must interpret the individual portions of a statute consistently with its overall purpose. The reading proposed by the plaintiff is inconsistent with the explicit intent of Congress.

■ Neither this court nor either of the parties has found any prior case law on the interpretation of the phrase "readily available." A search of the legislative history failed to produce any discussion on this particular issue. However, there was a reference to the fact that the new field of cryogenics, makes helium an absolute necessity because of the unavailability of any method to achieve temperatures below 20 degrees above absolute zero without the use of helium, 106 Cong.Rec. 18544 (1960), and the helium used for this purpose is in liquid form. Furthermore, it is crystal clear, despite some Congressional concern about the scope of authority granted by the Act to the Secretary that the legislators were motivated by an immediate threat to the na-

tional supply of helium. They therefore adopted a plan that would ensure the protection of that supply. It is inconceivable to this court that Congress intended to exclude liquid helium sales from the purview of the Act merely because the Bureau stores helium in its gaseous state. This court finds that the phrase "to the extent that supplies are readily available" refers to the quantities which the Secretary has on hand for sale, not to the particular form in which he happens to store those quantities.

Airco also argues that by virtue of the injunction issued in *Air Reduction Co. v. Hickel, supra,* the Government is precluded from enforcing the regulations promulgated by the Secretary to the extent that they apply to helium sales to Government contractors. The plaintiff seeks a declaratory judgment that the Government's attempts to compel Airco to report to the Bureau sales of helium to Government contractors are in violation of the permanent injunction issued in *Air Reduction Co., supra.*

In *Air Reduction Co.,* the plaintiff here brought an action against the Secretary and Under Secretary of the Interior and the Director of the Bureau of Mines to enjoin the enforcement of the Secretary's regulations promulgated pursuant to the Helium Act of 1960 to the extent that they applied to Government contractors. The district court entered an injunction against the enforcement of the helium regulations "insofar as they apply in all their aspects to purchases of helium by contractors of federal agencies." As described by the Court of Appeals for the District of Columbia in affirming the issuance of the injunction, those regulations required Government contractors to purchase their major requirements of helium from the Secretary or eligible private companies, defined eligible companies as those who complied with certain procedures and bought as much helium from the Government as it sold to Government contractors, and forbade the sale of Government helium to ineligible private companies. It was the enforcement of these regulations which the court enjoined,

and it is upon this decision that the plaintiff relies.

However, the opinions of both the district and circuit courts were very limited. They relied on § 167d(a) of the Helium Act which stated only that federal agencies were required to purchase their major requirements of helium from the Secretary and found the regulations which extended this requirement to federal contractors to be unauthorized. The court of appeals held explicitly that the Secretary did have the power to control purchases by federal contractors by means other than regulation. The court suggested contractual provisions as a suitable alternative.

The plaintiff has entered into a contract with two federal contractors under which it certified that the helium it delivered would be Bureau of Mines helium. Airco is obligated to comply with the terms of the purchase orders it accepted. Nothing in the district court's opinion and order voided this obligation.

However, Airco also entered into a contract with the Bureau of Mines pursuant to which it agreed to comply with certain reporting and repurchasing requirements that federal regulations enacted pursuant to the Helium Act. The injunction has enjoined the enforcement of those regulations to the extent that they relate to helium purchases by federal contractors.

In determining the plaintiff's obligations to report on the receipt and distribution of Bureau of Mines helium and to conduct its operation to avoid a deficit of Bureau of Mines helium in its inventory, the Government must look directly to the regulations. The contract merely includes a requirement that the plaintiff

"comply with the Helium Act, approved September 13, 1960, (74 Stat. 918; 50 U.S.C. § 167), and the Federal Regulations including Schedule of Prices and Charges issued pursuant thereto (Title 30 C.F.R. Part I) now or hereafter in force; and that aforesaid Helium Act and all existing and future regulations are incorporated herein by reference and made a part hereof."

Both opinions in *Air Reduction Co.* found the requirement that federal contractors purchase all their major helium needs from the Bureau of Mines to be unauthorized. However both courts went further than that. As this court reads those opinions, they also reached all portions of the regulations which required reporting of and compensation purchases for sales to federal contractors. Thus to the extent that the plaintiff's contract with the Bureau of Mines incorporated the federal regulations, those portions which regulated sales to federal contractors were not included.

As the Court of Appeals held in *Air Reduction Co.*, this holding does not preclude the Government from incorporating reporting and purchasing requirements into its contracts with eligible companies. However, it can no longer rely on incorporating by reference the federal regulations to accomplish this purpose. Those regulations are no longer in effect.

As a final argument, the Government contends that the plaintiff's action should be dismissed for a failure to exhaust administrative remedies. However, the contractual provision provides that factual disputes be resolved by the Contracting Officer of the Bureau of Mines. The facts in this case are not in dispute. The resolution of this matter is clearly a question of law over which this court has jurisdiction.

To the extent that the complaint seeks a declaration that the defendants are acting unlawfully with respect to plaintiff's sales of liquid helium to federal agencies, the defendants' motion for summary judgment is granted. To the extent that the complaint seeks a declaratory judgment that the defendants have acted unlawfully pursuant to the federal regulations and the plaintiff's contract with the Bureau of Mines with respect to plaintiff's sales of helium to federal contractors, the plaintiff's motion for summary judgment is granted and to that limited extent a permanent injunction is granted. This opinion does not, however, enjoin the defendants from entering into new contracts which extend

the reporting and purchasing requirements to sales to federal contractors.

SETTLE ORDER ON NOTICE.