**LOCAL DIVISION 1285, AMALGAMATED TRANSIT UNION, AFL/CIO/CLC, Plaintiff,**

v.

**JACKSON TRANSIT AUTHORITY, the City of Jackson, William T. Coleman, Jr., Secretary of Transportation, and William J. Usery, Secretary of Labor, United States Department of Labor, Defendants.**

No. C–76–104–E.

United States District Court,
W. D. Tennessee, E. D.

Dec. 23, 1977.

Linda R. Hirshman, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiff.

Sidney W. Spragins, Spragins & Murchison, Jackson, Tenn., for defendants.

## MEMORANDUM OPINION

WELLFORD, District Judge.

Plaintiff, an unincorporated labor organization, claims a violation of the Urban Mass Transit Act, 49 U.S.C. § 1601 *et seq.* (hereafter UMTA) and more particularly asserts that a contract required under 49 U.S.C. § 1609(c) has been violated by the City of Jackson, Tennessee (hereafter City), and its municipal transit authority. Plaintiff further claims that the United States Secretaries of Transportation and Labor have failed to carry out their responsibilities under this law. The federal officials have filed a motion to dismiss and/or for summary judgment, and the City and the Jackson Transit Authority (hereafter JTA) have likewise filed a motion to dismiss. After consideration of the matters submitted by the respective parties, oral argument, reconsideration of an earlier Opinion in this case [1], and the entire record, the Court has concluded that defendants' motions are well taken for the reasons indicated.

Plaintiff is the duly designated collective bargaining representative of JTA employees. This dispute arises out of a 1966 grant application by the City under UMTA for financial assistance in the operation of its public bus transit system. A labor agreement was executed in 1966 as required by the Act between plaintiff and JTA, and a grant was approved to the City. Plaintiff now claims that the City and JTA have abrogated this collective bargaining agreement and that the federal officials have failed to exercise statutory duties to prevent this allegedly wrongful action. We first turn to the latter contention.

## SECRETARY OF LABOR

Jurisdiction in this Court depends upon plaintiff establishing that a federal question exists, and that this is not simply a labor contract controversy which should be settled in state courts or before the NLRB. Plaintiff cites Section 13(c) of UMTA, 49 U.S.C. § 1609(c) [2] and argues that the Secretary of Labor has continuing authority and responsibility to protect the interests of employees under the "fair and equitable" labor agreement required by this provision. It is conceded that the Secretary of Labor is not a *party* to the agreement which plaintiff claims has been breached more than ten years after it was originally executed. Plaintiff cites no authority for its position, but submits an affidavit of the general counsel of the Amalgamated Transit Union, AFL–CIO, in Washington, to the effect that he has submitted complaints to the Department of Labor and that it has "consistently exercised ongoing responsibility to secure compliance with the requirements" of section 13c. The general counsel further

---

1. See n. 5, *infra.*

2. "(c) It shall be a condition of any assistance under section 3 of this Act that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retaining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2)(f) of the Act of February 4, 1887 (24 Stat. 379), as amended. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements." 49 U.S.C. § 1609(c).

asserts that the Secretary of Labor has interpreted requirements of this section of the law, made investigations of complaints of violations, engaged in conciliation, and initiated remedial action "including the administrative termination of grant funds."

That the Secretary of Labor may have performed these acts does not indicate that plaintiff has standing under the law to maintain this action against the Secretary for the particular relief requested. The Act in question provides for grants of financial assistance by the Federal government to State and local entities to assist in developing and improving mass transit. The process of collective bargaining is recognized in that the labor organization representing employees involved and the employing entity must submit an agreement covering those employees prior to approval by the Secretary of Labor. No further action on the part of the Secretary of Labor is specified. There is no jurisdictional basis for this Court to require of the Secretary of Labor a continuing responsibility not mandated or referred to in the Act in question. Compare *Kendler v. Wirtz*, 388 F.2d 381 (3d Cir. 1968) and *Johnson v. Redevelopmental Agency*, 317 F.2d 872 (9th Cir. 1963). Plaintiff has no standing in this Court to seek the relief requested against the Secretary of Labor. The claim against the Secretary of Labor is no basis for the exercise of pendent jurisdiction with respect to the breach of contract dispute. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Secretary of Labor's motion to dismiss is therefore granted.

### SECRETARY OF TRANSPORTATION

■ Plaintiff also alleges that the Secretary of Transportation has the responsibility, pursuant to 49 U.S.C. § 1608(e), to enforce the contractual agreement and asks that the Court order Secretary Adams (formerly Coleman) to take "appropriate action to enforce compliance." Again, there is no express statutory language upon which this petition is based except that the Secretary of the Department of Transportation is generally authorized to carry out the essential functions of the UMTA. Plaintiff argues that the Secretary is authorized under § 1602 to make grants or loans on terms and conditions required under the Act and that this authority includes the responsibility to enforce a labor contract made at the time of the Act. Section 1608(e) makes it clear that the Secretary is not to regulate the mode of operation or rates of any public or private transit agency, but plaintiff refers specifically to the following language of that section: ". . . but nothing in this subsection shall prevent the Secretary from taking such actions as may be necessary to require compliance by the agency or agencies involved with any undertaking furnished by such agency or agencies in connection with the application for the grant."

The primary purpose for the insertion of that provision, however, related to the fear of Congress that the Department of Transportation would become a super rate-maker for local and state utilities. 110 *Cong. Rec.* 14976–79 (1964). It is difficult to attribute to Congress, however, an intent to require the Secretary of Transportation, in perpetuity, to oversee, supervise and enforce the detailed provisions of the manifold and varying contract arrangements which are "preconditions" to securing grants under UMTA. The cases cited by plaintiff [3] involved reviewability by the courts of an administrative determination required to be made by an administrative officer under a statute (1) with regard to use of federal highway funds; (2) with regard to food and drug regulations issued under congressional enactment; and (3) with regard to an Immigration Act order of exclusion by the Attorney General. These cases, in differing circumstances, spell out the right of judicial review of administrative actions *authorized and required by law*. None involves the type of mandamus sought here by plaintiff

3. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 409, 412, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and *Brownell v. WeShung*, 352 U.S. 180, 185, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956).

to order the Secretary of Transportation affirmatively to take some action, particularly to inject himself into the midst of a labor dispute.

Congress has been jealous to vest particular agencies, such as the Department of Labor, the National Railway Adjustment Board, the National Mediation Board and the NLRB, and not the courts, with authority to order parties to do or refrain from doing things in collective bargaining disputes. It would be stretching beyond the reasonable to infer some intent by Congress to involve the Transportation Secretary with the detailed contentions of parties about compliance with or breach of a collective bargaining agreement merely because such an agreement was made years ago in respect of an original urban transit grant approved and administered by the Transportation Department. The statute here does not create a federal right in favor of plaintiff to demand such action by the Secretary of Transportation. It does not indicate a legislative intent to create such a remedy, nor is it consistent with the legislative scheme to imply the remedy sought by plaintiff. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). No case is cited by plaintiff indicating such an interpretation of UMTA.

The Court is therefore without jurisdiction to order defendant Adams, Secretary of Transportation, to take action to enforce compliance under UMTA of the contract in question. This defendant's motion to dismiss is granted.

## JACKSON TRANSIT AUTHORITY AND CITY OF JACKSON

Plaintiff contends that federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 still applies because breach of the contract which was required under UMTA must be treated as a breach of the statute itself, and that plaintiff, aggrieved by reason of defendant's alleged violation, has standing to sue in federal court. Plaintiff first relies upon *Bradford School Bus Transit v. Chicago Transit Authority,* 537 F.2d 943 (7th Cir. 1976). That case, citing *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), held that a private competitor had standing to challenge an administrative determination of a UMTA grant to an allegedly competing public authority, because "the grant contract included a provision which under certain conditions specifically prohibited the CTA (public authority) from engaging in school bus operations in competition with private bus operators." 537 F.2d at 944. This was in accord with regulations issued under UMTA. Compare *Suburban Safeway Lines v. City of Chicago,* 416 F.2d 535 (7th Cir. 1969). Defendant Urban Mass Transit Administration conceded in the *Bradford* case that the purpose of the provision of the Act in question was to protect private companies "from competition by federally funded public transit systems." 537 F.2d at 946. It was, therefore, held that on the basis of competitive considerations plaintiff had standing to sue both the Urban Mass Transportation Administrator in connection with her grant decision, as well as the public transit authority directly involved in the grant. It is doubtful that this case represents authority for plaintiff here to sue the City and JTA. Nor does a later case cited by plaintiff from that Circuit, *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977), support jurisdiction in this situation, because that case was decided under the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The next case relied upon by plaintiff for standing is *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920 (2d Cir. 1968). That case simply held that a constitutional claim involving racial discrimination was justiciable and gave plaintiff standing to challenge the action of a government agency in respect to urban renewal. Compare *Nashville I–40 Comm. v. Ellington,* 387 F.2d 179 (6th Cir. 1967), *cert. den.,* 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968). Neither *Bradford* nor *Norwalk CORE,* then, can fairly be interpreted as authorizing breach of contract claims by a private party against a local government entity because a federal statute was

obliquely involved. Rather, they hold that one may utilize a good faith constitutional ground to assert discrimination in the operation or administration of a federal law or grant, and that a private party may sue the Urban Mass Transit Administrator under certain circumstances to review an administrative decision after exhaustion of administrative remedies. Other cases cited by plaintiff relate to standing by one economically and environmentally aggrieved to seek judicial review of an administrative determination.[4] There is no administrative action or determination in this case to be reviewed.

■ In the absence of reported decisions on point, the parties have cited several as yet unreported district court cases addressing the issue of federal subject matter jurisdiction under UMTA for breach of § 13(c) agreements. Plaintiff relies on *Local Division 519, Amalgamated Transit Union v. The LaCrosse Municipal Transit Utility, et al.,* 445 F.Supp. 798 (W.D.Wis. 1978), in which Judge Doyle found federal jurisdiction to exist under UMTA.[5] Like Judge Doyle, this Court agrees that UMTA is not a regulatory statute—it rather represents an exercise of the federal spending power to deal with urban mass transit problems. It is not an act, like the Railway Labor Act, purporting to set out federal authority over employees in an industry, or the Interstate Commerce Commission Act delegating rule-making authority over interstate transportation. UMTA deals primarily with state and municipal authorities whose concern is with local transportation problems. This Court, therefore, respectfully disagrees with the conclusion of the learned Wisconsin District Judge that Railway Labor Act[6] or Interstate Commerce Commission[7] cases

are analogous to the instant situation. This Court finds no "involved implication of a private remedy" to a labor organization arising out of alleged circumstances which have occurred more than ten years after the rights of plaintiff were recognized and protected as required by UMTA at the time a grant of money was approved.

■ Again, like Judge Doyle, this Court concludes that while *Bradford School Bus Transit v. Chicago Transit,* 537 F.2d 943 (7th Cir. 1976) and *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977) might or could be supportive of plaintiff's position, they are *not directly so.* UMTA was intended to protect collective bargaining rights only secondarily. Congress addressed this issue to assure employees that existing rights and contracts would not be eliminated as a part of the initial grant process to municipalities and that the grants under the Act would "not be used in a manner that is directly or indirectly detrimental to legitimate interests and rights of such workers." 2 *U.S. Code Congressional and Administrative News* p. 2584 (1964). The federal officials charged with this responsibility have acted properly here by not involving themselves in continuous controversies between private (or public) parties to a contract approved by them.

■ This Court is persuaded that Congress is the appropriate body to determine clearly whether it is national policy for federal courts to become involved in local labor disputes which happen to be within an urban transit area. Congress has not indicated such a policy in UMTA. Moreover, plaintiff asserts no claim of constitutional concern such as race or sex discrimination or freedom of speech. Compare

4. *Association of Data Processing Service Organizations, Inc. v. Camp, supra; Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

5. In an earlier opinion in this case, this Court considered a transcript of Judge Doyle's bench ruling of October 25, 1977, at which time he reserved ruling on the jurisdictional issue. The Court has fully considered Judge Doyle's opin-

ion of January 27, 1978, in addressing plaintiff's motion to reconsider.

6. *International Association of Machinists v. Central Airlines,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963).

7. *Brotherhood of Locomotive Engineers v. Chicago & Northwestern Railway Company,* 314 F.2d 424 (8th Cir. 1963).

*Cannon v. University of Chicago,* 559 F.2d 1063 (7th Cir. 1977).

Further, it appears that all other courts which have addressed this issue have concluded, contrary to Judge Doyle, that no federal subject matter jurisdiction exists for breach of contract actions under UMTA.[8] These decisions emphasize that the union's right of action draws its vitality from the collective bargaining agreement, enforceable under state law, rather than from the provisions of UMTA.

Moreover, this Court is convinced that plaintiff's right of collective bargaining will not be lost if this matter is left to state law on the basis of a breach of contract or arbitration claim. It should be noted on the record before us that the private employer with which plaintiff had dealt prior to 1966 had already served notice of its intent to terminate business as of April 2, 1976, before the City's creation of JTA under *Tennessee Code Annotated* § 6–1602 and the application for federal funds under UMTA for new buses and a new garage structure.[9] Plaintiff would have, absent such action, no contract with any viable entity because, as the ordinance states, there did "not appear to be any private source interested in establishing and operating bus service within the City of Jackson." The contract which is sought to be enforced sets out private rights which may be enforced, if necessary, in state court. The rights of plaintiff were preserved in the contract which was approved by federal authorities as a part of a grant application procedure. This Court is not inclined to find that federal law has pre-empted state remedies as claimed by plaintiff. *Tennessee Code Annotated* § 6–3802 (1976 Supp.), specifically authorizes Tennessee cities and transit authorities, such as those involved here, to enter into contracts to protect workers as provided in

UMTA, and further provides for binding arbitration pursuant to the provisions of any collective bargaining agreement.[10]

The Court also has carefully considered the implications of *McDaniel v. University of Chicago,* 512 F.2d 583 (7th Cir. 1975), *vacated and remanded,* 423 U.S. 810, 96 S.Ct. 20, 46 L.Ed.2d 30 (1975), *on remand,* 548 F.2d 689 (7th Cir. 1977), *cert. den.,* 431 U.S. 963, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), but this Court finds that plaintiff has not met all the requirements of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) that there was any demonstrated legislative intent to create a private federal remedy for labor organizations such as plaintiff. This is a cause of action traditionally relegated to state law, unless preempted by a federal statute or agency, such as NLRA or NLRB. As stated above, the Court is not persuaded that federal law preempts whatever remedies plaintiff has under state law.

In summary, plaintiff seeks to enforce, or an interpretation of, asserted contractual rights in this cause. The suit is not basically concerned with the validity or construction of a federal statute or the action taken by an administrative officer or agency under provisions of the federal statute. "The fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant all aspects of its performance or nonperformance to be governed by federal law rather than by the state law applicable to similar contracts in businesses not under federal regulation[s]." *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486, 490 (2d Cir. 1968). See also *McFaddin Express v. Adley Corp.,* 346 F.2d 424 (2d Cir. 1965).

As was previously stated, plaintiff does not present a federal question in its asserted claim against the Secretaries of Labor

---

**8.** *Local Division No. 714, Amalgamated Transit Union v. Greater Portland Transit District,* Civ. No. 77–54–SD (D. Me. Jan. 11, 1978); *Division 580, Amalgamated Transit Union v. Central New York Regional Transportation Authority,* No. 77–CV–45 (N.D. N.Y. Oct. 19, 1977); *Transit Authority of Louisville and Jefferson County v. Amalgamated Transit Union,* No. C–76–0535–L(B) (W.D. Ky. April 20, 1977); *Metro-*

*politan Atlanta Rapid Transit Authority v. Local Division 732, Amalgamated Transit Union,* Civ. No. 18492 (N.D. Ga. July 11, 1973).

**9.** See Jackson City Ordinance proposed April 1, 1966, approved April 5, 1966.

**10.** Section 6 of the agreement in controversy provides for arbitration which plaintiff seeks.

and Transportation. As such, there is no basis for assuming pendent jurisdiction over what has been determined to be a state-law breach of contract or arbitration claim.

Plaintiff has therefore failed to demonstrate that federal jurisdiction exists in this case. Defendants' motions to dismiss are accordingly granted.