DIVISION 1212, AMALGAMATED
TRANSIT UNION, AFL–CIO,
Plaintiff,

v.

CHATTANOOGA AREA REGIONAL
TRANSPORTATION AUTHORITY;
ATE Management and Service Co., De-
fendants.

No. CIV–1–79–212.

United States District Court,
E. D. Tennessee, S. D.

Oct. 12, 1979.

Reingold, Powers & Schulman, Chattanooga, Tenn., for plaintiff.

George M. Derryberry, Chattanooga, Tenn., for defendants.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action for declaratory and injunctive relief, damages and attorneys' fees, brought by Division 1212, Amalgamated Transit Union, AFL–CIO (Union) against the Chattanooga Area Regional Transportation Authority (CARTA) and the ATE Management and Service Company. The case is presently before the Court upon the motion by the Union for a preliminary injunction (Court File # 3) and the motion by the defendants to dismiss the complaint for lack of subject matter jurisdiction (Court File # 5).

The following facts appear from the pleadings of the parties. Chattanooga first applied to the federal government for a mass transportation improvement grant under the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1601 *et seq.* (UMTA) in 1972. The purpose of the grant was to allow the City to purchase certain local transportation systems and to buy additional capital equipment for urban mass transportation in the Chattanooga area. CARTA, the transit authority created under Chapter 38, Title 6 of the *Tennessee Code Annotated* to operate the transit system, and the Union entered into an Agreement, required by section 13(c) of UMTA, respecting the interests of employees affected by the federal assistance. Section 13(c) provides that, "It shall be a condition of any assistance . . . that fair and equitable arrangements are made [between the grant recipient and its employees] as deter-

mined by the Secretary of Labor, to protect the interests of employees affected by such assistance." 49 U.S.C. § 1609(c). Section 13(c) requires also that these protective labor arrangements shall include provisions respecting the preservation of employee rights under existing collective bargaining agreements, the continuation of such agreements, and the protection of employees against a worsening of their position. In addition, the contract for the UMTA grant must specify the terms and conditions of the protective labor arrangement. The 1972 § 13(c) Agreement was superseded in 1975 by a new § 13(c) Agreement, a copy of which is attached to the Complaint as Exhibit "B". The Union and CARTA agreed to become parties to a National § 13(c) Agreement in 1976. In early 1979 CARTA and the Union exchanged notices of change in the collective bargaining agreement, and have for several months attempted to negotiate a new collective bargaining agreement to no avail. The Union contends that the agreement entered into by CARTA and the Union in 1976 included Paragraph 9 of the 1975 § 13(c) Agreement, a provision dealing with compulsory interest arbitration. "Interest" arbitration differs from "grievance" arbitration in that it is the arbitration that may be required when an employer and the collective bargaining agent of employees come to an impasse with respect to the terms and conditions of a new collective bargaining agreement and does not deal with disputes that may arise under an existing collective bargaining agreement. *See Division 1287, Amalgamated Transit Union v. Kansas City Area Transp. Auth.*, 582 F.2d 444 (8th Cir. 1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). The Union seeks presently a preliminary injunctive order by the Court compelling the defendants to proceed to arbitration toward arriving at a new collective bargaining agreement. The defendants contend that this action should be dismissed for lack of subject matter jurisdiction because the claims of the plaintiff amount to only a breach of contract action and do not "arise under" the Constitution, laws or treaties of the United States, *see* 28 U.S.C. § 1331, or,

alternatively, that the plaintiff is not entitled to the extraordinary remedy of a preliminary injunction.

The First, Seventh, and Eighth Circuit Courts of Appeals have each addressed the issue of whether a controversy between a UMTA grant recipient and a labor union involving a claim of breach of a § 13(c) Agreement is a controversy that "arises under" the laws of the United States. Each court answered the issue in the affirmative. In *Division 1287, Amalgamated Transit Union v. Kansas City Area Transp. Auth.*, 582 F.2d 444 (8th Cir. 1978), cert. denied, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979), the Eighth Circuit recognized that § 13(c) of UMTA describes minimum standards for employee protection and otherwise regulates, in general terms, the contents of the collective bargaining agreements between the labor union representing transit employees and the transit authority. Apparently because of the extensive statutory regulations of § 13(c) Agreements, the court held that the alleged breach of a § 13(c) Agreement satisfied the jurisdictional requirements of 28 U.S.C. § 1331, 582 F.2d at 450. The Seventh Circuit also agreed with this analysis. It found that an alleged breach of a § 13(c) Agreement stated a cause of action that "arises under" the laws of the United States because such contracts are infused with statutory prerequisites, and questions concerning the validity of such contracts imposed by UMTA and any rights flowing therefrom require the application of federal law. *Local Division 519 v. Lacrosse Municipal Transit Util.*, 585 F.2d 1340 (7th Cir. 1978). "[A] 13(c) Agreement is so intertwined with the federal statutory scheme that § 1331 subject matter jurisdiction must necessarily arise." *Id.* at 1346. In *Local Division 714 v. Greater Portland Transit District*, 589 F.2d 1 (1st Cir. 1978), the First Circuit found that § 1331 subject matter jurisdiction existed over claims asserting the violation of a § 13(c) Agreement because § 13(c) "directs compliance with the mandated labor protective arrangements and implies a federal remedy for breach thereof in favor of those employees for whose benefit § 13(c) was enacted." *Id.* at 6.

■ Although the matter is not without some controversy, since several district courts have found no federal subject matter jurisdiction in cases similar to this one, *see Local Division 1285 v. Jackson Transit Authority*, 447 F.Supp. 88 (W.D.Tenn.1977), appeal docketed, No. 78–1185 (6th Cir. May 16, 1978); *Metropolitan Atlanta Rapid Transit Authority v. Local Division 732*, No. 18,429 (N.D.Ga. July 11, 1973), the Court is of the opinion that the approach adopted by the First, Seventh and Eighth Circuits is correct and that this Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331.

■ As hereinbefore stated, the Union seeks a preliminary and permanent injunction ordering CARTA to proceed to arbitration of a new collective bargaining agreement. A preliminary injunction is an extraordinary remedy and will not be granted absent consideration of the following four factors: (1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the state of the balance between this harm and the injury that granting the injunction would inflict upon the defendant; (3) the probability that the plaintiff will succeed upon the merits; and (4) the public interest. Wright & Miller, *Federal Practice and Procedure : Civil* § 2948.

■ In order for the Union to succeed upon the merits in the case at bar, it must demonstrate that, pursuant to a § 13(c) Agreement, whether it be the 1975 Agreement or the National Agreement, that CARTA is obligated to engage in interest arbitration when the parties reach an impasse in negotiations aimed at developing a new collective bargaining agreement. Clearly, the 1975 § 13(c) Agreement obligated the parties to submit to interest arbitration in the event that they were unable to reach a collective bargaining agreement on their own. *See* Exhibit B to the Complaint, ¶ 9. This Agreement, however, appears to have been succeeded by the National § 13(c) Agreement, which does not appear to in-

**40**

clude a provision obligating the parties to engage in interest arbitration, or incorporating Paragraph 9 of the 1975 Agreement. It does not appear, therefore, that the Union has demonstrated a substantial likelihood of success upon the merits of the case.

In its motion for a preliminary injunction, the Union merely asserts that it "is being irreparably injured by Defendants' actions, refusing arbitration. . . ." The bare assertion that the plaintiff will be irreparably harmed, without elucidation, cannot justify the extraordinary remedy of a preliminary injunctive order. According to the affidavit of Mr. Robert S. Ronka filed in opposition to the plaintiff's motion for a preliminary injunction (Court File # 6), CARTA is continuing to deal with its employees in accordance with a collective bargaining agreement entered into by the parties on July 1, 1977. (Exhibit 7 to Affidavit of Robert S. Ronka, Court File # 6) Mr. Ronka states that, since the expiration of that collective bargaining agreement, full wages have been paid, full fringe benefits are being provided, and that all other duties and obligations imposed upon CARTA by that agreement are being fulfilled. In view of CARTA's apparent willingness to comply with the 1977 collective bargaining agreement during periods of negotiation, the Court cannot conclude that the plaintiff will be irreparably harmed if a preliminary injunction is not issued.

Balancing the possible benefits to the plaintiff from the issuance of a preliminary injunctive order against the possible harm to the defendants herein, the Court concludes, as suggested by the defendants, that the issuance of a preliminary injunction would amount to a *fait accompli* resolution of the merits of the dispute between the Union and CARTA. This harm to the defendants mitigates against the issuance of such an injunction.

Finally, the Court concludes that the plaintiff has failed to produce sufficient evidence or argument in support of its contention that it would be in the public interest that a preliminary injunctive order be issued ordering CARTA to engage in interest arbitration.

In consideration of the foregoing, both the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and the plaintiff's motion for a preliminary injunction will be denied. An appropriate order will enter.