In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4141

Area Transportation, Inc.,

Plaintiff-Appellant,

v.

Joel P. Ettinger, Regional Administrator
of the Federal Transit Administration for Region
V, United States Department of Transportation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3287--Ruben Castillo, Judge.

Argued April 18, 2000--Decided July 18, 2000

Before Flaum, Ripple, and Williams, Circuit Judges.

Flaum, Circuit Judge. Area Transportation, Inc.
("Area Transport") filed suit against the Federal
Transit Administration ("FTA"), seeking (1) a
declaration that a non-party bus service is
ineligible for future grants due to past
violations of a grant condition; and (2) an order
directing the federal agency to require the non-
party grantee to repay all transit assistance
funds that it received while in violation of the
grant agreement. The district court dismissed the
suit for lack of standing, and we affirm.
Background

Area Transport is a privately-owned provider of
school bus services in the Flint, Michigan area.
The FTA awards grants to assist state and local
agencies in financing the implementation and
operation of mass transportation facilities. To
receive a grant, a recipient must comply with
various conditions, including an agreement that
the recipient will not provide exclusive school
bus service in competition with a private (non-
grant recipient) school bus company. See 49
U.S.C. sec. 5323(f)(1).

On August 18, 1998, Area Transport filed an
administrative complaint with the FTA Region V

Administrator. Area Transport alleged that a grant recipient, Mass Transportation Administration of Flint, Michigan ("MTA"), was providing exclusive school bus service in violation of the applicable prohibition.

Following investigation, the FTA issued a written decision on May 5, 1999, concluding that MTA had violated the bus service prohibition. The FTA ordered MTA "to cease and desist in providing illegal service," and further held that failure to comply with this order could lead to additional penalties.

Shortly thereafter, Area Transport filed suit in district court under the federal transit laws and the Administrative Procedure Act, 5 U.S.C. sec. 701. The complaint alleged that the FTA did not appropriately sanction MTA. Specifically, Area Transport requested a declaration that MTA is ineligible for future FTA grants and also sought to have the district court compel the FTA to order MTA to repay all grant funds received during the period that it was in violation of the non-compete grant agreement. The FTA moved to dismiss, and the district court granted the dismissal for lack of standing, finding that Area Transport's purported injury is not fairly traceable to the FTA decision under review and that the requested relief would not redress the particular injury of which Area Transport complains. Area Transport now appeals.

Discussion

To establish standing under the Administrative Procedure Act, a plaintiff must satisfy the Article III constitutional standing requirements and also fall within the "zone of interests" to be protected or regulated by the regulatory statute at issue. See Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970); City of Evanston v. Regional Transp. Auth., 825 F.2d 1121, 1123 (7th Cir. 1987). The district court in this case concluded that Area Transport is in the class of entities protected by sec. 5323(f), but then concluded that Area Transport failed to meet the Article III standing requirements.

Article III standing requires a party to demonstrate three elements: (1) that it suffered an "injury in fact"--an invasion of a legally recognized interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) that there is a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of and not the result of actions by some third party not

before the court; and (3) that a favorable decision will likely redress the injury. See Friends of the Earth, Inc. v. Laidlaw Env. Servs., Inc., 120 S.Ct. 693, 704 (2000); Wisconsin v. FERC, 192 F.3d 642, 646 (7th Cir. 1999). The district court found that Area Transport has adequately shown an injury in fact--that it suffered harm to its "competitive interest" because of the improper federal grants to MTA-- but it found Area Transport's showing with respect to the second and third standing requirements lacking. Although the FTA disputes on appeal whether Area Transport's purported injury is legally cognizable, we need not reach that issue because we agree with the district court that Area Transport has failed to meet the causation and redressability prongs of standing.

Area Transport's argument begins with its allegation that MTA unfairly built a strong competitive position in the Flint area school bus service market because for a period of time it was able both to receive federal grants and to operate a school bus service. According to Area Transport, because MTA has improperly obtained a strong market position, the FTA's failure to go beyond a cease and desist order and to require repayment of previous, unlawfully obtained grants is a cause of Area Transport's ongoing injury to its "competitive interests." Only a declaration that the FTA must seek from MTA repayment of prior grants and must deny MTA any future grants will level the competitive playing field.

In this case, the propositions that the FTA's decision and remedy cause Area Transport economic injury and that imposing harsher penalties against MTA will alleviate this injury are too speculative to satisfy the standing requirements. See Simmons v. ICC, 900 F.2d 1023, 1026 (7th Cir. 1990) (holding that the petitioners failed to make a sufficient showing that their competitive injury was fairly traceable to the ICC's action). The FTA's ruling already requires MTA to cease providing illegal school bus service if it wants federal grants. Assuming for the purposes of argument that Area Transport still demonstrates a continuing injury in fact, causation in this case requires showing that such injury is fairly traceable to the FTA's decision not to impose harsher sanctions than it did. There is no indication in the record that, since the FTA issued its cease and desist order, MTA is still even competing with Area Transport./1 Presumably--and Area Transport's complaint and other filings below leave us in the position of having to presume--Area Transport is concerned that MTA can now compete with Area Transport in the exclusive school busing market having already fattened its coffers with improper federal funds.

But to the extent that such an outcome requires not only that MTA react to the FTA's cease and desist order by forgoing future federal grants in favor of continuing its school bus service, but also that MTA do so successfully, this scenario is both highly speculative and dependent on uncertain actions by MTA, who is not before us. See Perry v. Village of Arlington Heights, 186 F.3d 826, 829 (7th Cir. 1999) (explaining that standing requires "a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not before the court").

Area Transport's failure to demonstrate redressability also stems from the vagueness and severe uncertainty of this causal chain. The requirement of "'actual injury redressable by the court,' . . . tends to assure that the legal questions presented to the court will be resolved . . . in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (citations omitted). As the district court pointed out, any potential repayment of grant monies would go to the FTA, not to Area Transport. Perhaps the disgorgement of MTA's improper monies would negatively impact MTA's business, but the prospect that Area Transport will at that point find itself in a stronger position to win future service bids is pure conjecture. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'"); Harp Advertising Ill., Inc. v. Village of Chicago Ridge, 9 F.3d 1290, 1292 (7th Cir. 1993) (stating that a key ingredient of standing is a demonstration by the plaintiff that his injury likely will be redressed by a favorable decision)./2 Ironically, the remedy Area Transport seeks--that MTA be barred from receiving future federal transportation grants--might very well undermine Area Transport's market position. As it stands, MTA is currently prohibited under the statute and the FTA's order from providing exclusive school bus services so long as it continues to receive federal grants. If MTA were barred from receiving those grants, it would have greater freedom to compete with Area Transport. We agree with the district court that Area Transport has not established causation or redressability, and accordingly the case was properly dismissed./3

Conclusion

For the reasons stated herein, we AFFIRM the decision of the district court.


/1 Area Transport refers us to Bradford School Bus Transit, Inc. v. Chicago Transit Authority, 537 F.2d 943 (7th Cir. 1976), where we held that a private bus company had standing to sue a city transit authority and the Urban Mass Transportation Administration (UMTA), seeking a declaration that the transit authority was engaged in school bus operations in violation of the Urban Mass Transportation Act. That case differs from this one, among other reasons, because Bradford could point to particular contracts for which it had bid but that were awarded to CTA and because the UMTA was continuing to provide grants to CTA when CTA was still providing school bus service in violation of the non-compete agreement. Here, Area Transport does not claim that the FTA is overlooking a current violation of federal regulations by MTA.

/2 This case is distinguishable from such cases as American Federation of Gov't Employees v. Cohen, 171 F.3d 460 (7th Cir. 1999), and Safir v. Gibson, 417 F.2d 972 (2d Cir. 1969), in which this Court and the Second Circuit concluded that injuries to competitive interests were redressable through re-bidding on contracts and disgorgement, respectively. The Cohen court so concluded only after finding that the plaintiff's allegations established "a good chance of gaining some of this work," and distinguishing that case from the D.C. Circuit's decision in National Maritime Union of America v. Commander, Military Sealift Command, 824 F.3d 1228 (D.C. Cir. 1987), which was read to stand for the proposition that the redressability requirement was not met where the record did not even suggest that the employer of union members would participate in re-bidding after the union challenged the bidding process. 171 F.3d at 467. The Safir opinion deals only with standing to sue under the statute at issue, not the constitutional standing requirements, and the court in that case based its rulings on several particular factual allegations by the plaintiff regarding its future business activities. 417 F.2d at 977-78.

/3 Having concluded that Area Transport lacks standing, we need not consider the FTA's claims on appeal that there is no private right of action under sec. 5323(f) to seek review of sanctions imposed against a competitor or that the FTA's decision is discretionary and unreviewable under the APA.